**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE UNITED STATES OF AMERICA,

Plaintiff,

v.

FRANKLIN COUNTY MUNICIPAL COURT; JESSICA D'VARGA, Administrative and Presiding Judge for Franklin County Municipal Court, in her official capacity; ENOCH WHITE, Director of Security, Franklin County Municipal Court, in his official capacity,

Defendants.

No. 2:26-cv-1025

**COMPLAINT**

## INTRODUCTION

1. The Constitution grants the Federal Government the exclusive authority to establish a "uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. Based on that authority and others, "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

2. Through the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and related statutes, Congress has created an "extensive and complex" framework for the "governance of immigration and alien status." *Arizona,* 567 U.S. at 395.

3. Generally, civil immigration enforcement actions near courthouses focus on targeted aliens, including national-security or public safety threats, gang members, and certain aliens with criminal convictions. Memorandum from Tae Johnson, Acting Dir., U.S. ICE, Civil Immigration Actions in or Near Courthouses (Apr. 27, 2021), https://perma.cc/BJS5-9DY3.

4. Courthouse arrests are thus essential for operational effectiveness, officer safety, and protecting the community. Conducting an arrest at or near a courthouse often reduces the risk of flight and safety risks to the public, law enforcement officers, and subjects themselves, in part because individuals are usually screened for weapons or other contraband before entering a courthouse. For these reasons, criminal warrants are often executed at courthouses. The same is equally true for immigration enforcement.

5. Contrary to this safety-oriented approach, the Franklin County Municipal Court (hereinafter "FCMC") earlier this year enacted Rule 2.10 ("Rule"), which provides in relevant part that "[n]o individual shall be subject to a civil arrest while present in the courthouse for the purpose of attending a court proceeding or conducting other lawful court business."

Franklin Cnty. Mun. Ct. Loc. R. 2.10 (B)(1).[1] Rule 2.10 does not apply to arrests carried out pursuant to a judicial warrant issued by a judge. *Id.* (B)(2).

6. The INA, by contrast, provides that "an alien may be arrested and detained" pending a removal proceeding based on "a warrant issued by the [Secretary of Homeland Security]." 8 U.S.C. § 1226(a). It also authorizes immigration officers to arrest any alien without a warrant in certain circumstances. *See id.* § 1357(a)(2). The statute thus authorizes federal immigration agents to rely on administrative warrants, which are issued by the Secretary rather than by a judicial officer.

7. Rule 2.10 thus purports to superimpose a judicial-warrant requirement in circumstances where the INA would require only an administrative warrant—or in some instances, no warrant at all.

8. This provision has already altered ICE operations. Since the Rule took effect, ICE has made no civil immigration arrests at FCMC and has had to devote additional personnel, surveillance, vehicles, equipment, and overtime to arrests elsewhere.

9. Those at-large arrests are less predictable and can expose officers, the public, and arrest subjects to greater risk than a targeted arrest in a screened, controlled setting.

10. Because Rule 2.10 prevents civil immigration enforcement arrests at the courthouse, federal agents must expend substantial resources and risk their safety trying to apprehend aliens in other locations.

11. Rule 2.10 attempts to control federal immigration enforcement and interferes with the relationship between the Federal Government and aliens who may be subject to arrest and removal under federal law.

[1] Available at https://www.franklincountymunicourt.org/files/sharedassets/municourt/v/3/documents/local-rules/fcmc-local-rule-02.pdf.

12. The restrictions on civil arrests are preempted by the Supremacy Clause and blatantly contravene principles of intergovernmental immunity. Such restrictions attempt to regulate the Federal Government's performance of core federal functions—the apprehension and detention of unlawfully present aliens.

13. It is for the Federal Government to determine under what circumstances federal officers will make arrests, and Congress has not seen fit to impose the prohibitions and requirements that Rule 2.10 imposes.

14. Under a straightforward application of the aforementioned principles, Rule 2.10 improperly seeks to regulate the Federal Government's performance of its immigration enforcement functions.

15. Accordingly, Rule 2.10 is invalid under the Supremacy Clause and must be enjoined. The United States brings this declaratory and injunctive action to prohibit FCMC from enforcing Rule 2.10.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

17. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and a substantial part of the acts or omissions giving rise to this action arose from events in this District.

18. This Court has authority to provide the relief requested under its inherent equitable powers, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

## PARTIES

19. Plaintiff is the United States of America. The United States is vested with plenary authority to regulate immigration under its statutory and constitutional authorities. It is responsible for enforcing the federal immigration laws through its agencies—including the

Departments of Justice, State, Labor, and Homeland Security, along with DHS's component agencies, including ICE and U.S. Customs and Border Protection ("CBP").

20. Defendant Franklin County Municipal Court is a municipal court located in Columbus, Ohio. FCMC has authority to enact rules concerning its local practice. *See* Ohio Const. art. IV, § 5(B).

21. Defendant Jessica D'Varga is Administrative and Presiding Judge of Franklin County Municipal Court. As Administrative and Presiding Judge, she is responsible for handling administrative issues common to all divisions of FCMC. Ohio R. Super. 4.02(A).

22. Defendant Enoch White is Director of Security at Franklin County Municipal Court. As Director of Security, Mr. White oversees the security apparatus at FCMC, including court security officers (CSOs), who are in charge of securing courtrooms and court facilities. Ohio R. Super. 14.16 (A).

23. Defendants are sued in their official capacity only. The United States seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction, or under their control.

## **CONSTITUTIONAL AND STATUTORY BACKGROUND**

24. The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof[] . . . shall be the supreme Law of the Land[] . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

25. "State law[s] may run afoul of the Supremacy Clause in two distinct ways." *North Dakota v. United States,* 495 U.S. 423, 434 (1990) (plurality opinion). Under the doctrine of intergovernmental immunity, states may not "regulate the [federal] Government directly or discriminate against it." *Id*. And the preemption doctrine bars both state laws that conflict

with an express congressional statute and state laws that "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372-73 (2000) (quotation marks omitted).

26. It is "axiomatic" that the constitutionality of local ordinances or rules like the one at issue here are "analyzed in the same way as that of statewide laws." *United Auto., Aerospace & Agric. Implement Workers of Am. Loc. 3047 v. Hardin County, Kentucky*, 842 F.3d 407, 418 (6th Cir. 2016).

27. The Constitution grants the Federal Government the exclusive authority to establish a "uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. Based on that authority and others, "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona,* 567 U.S. at 394.

28. Through the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and related statutes, Congress has created an "extensive and complex" framework for the "governance of immigration and alien status." *Id*. at 395.

29. "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Id*. at 396. Removal is a civil process initiated at the discretion of federal immigration officers. *Id.*; *see* 8 U.S.C. §§ 1229, 1229a. DHS—mainly through its component agency, ICE—is responsible for arresting and detaining aliens who are, or may be, subject to removal.

30. When federal officials decide to seek removal, the Secretary of Homeland Security may have discretion to detain the alien pending resolution of his removability or to release the alien on bond or parole. 8 U.S.C. § 1226(a). But for certain categories of aliens, such as aliens who have committed specified crimes, the Secretary "shall" detain the alien, *id.* § 1226(c)(1), subject to resource constraints and traditional exercises of prosecutorial

discretion. *See United States v. Texas*, 599 U.S. 670, 680 (2023). Similarly, once an alien has been adjudged removable, he generally must be removed within 90 days, and he is subject to mandatory detention either "[d]uring the removal period" or, in certain circumstances, beyond the removal period. 8 U.S.C. § 1231(a)(2), (6).

31. As particularly relevant here, Congress has specified the procedures for "arrest[ing] an alien during the removal process" to effectuate detention. *Arizona*, 567 U.S. at 407.

32. The INA provides that "an alien may be arrested and detained" pending a removal proceeding based on "a warrant issued by the [Secretary of Homeland Security]." 8 U.S.C. § 1226(a). The statute thus authorizes federal immigration agents to rely on administrative warrants, which are issued by the Secretary rather than by a judicial officer.

33. Administrative immigration warrants are issued within the federal immigration enforcement framework based on an administrative determination that the alien is subject to arrest and detention under the INA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(b), 287.5(e)(2). To obtain such an administrative warrant, an ICE immigration agent must find "probable cause." *DHS Sets the Record Straight on Administrative Warrants and American Public Support of President Trump's Deportations of Illegal Aliens*, U.S. Dep't of Homeland Sec. (Feb 4, 2026), https://perma.cc/Y5XC-ZJHR

34. Federal immigration agents may arrest an alien "without [a] warrant" if the agent "has reason to believe that the alien" is unlawfully present in the United States and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

35. Congress has also expressly contemplated that immigration enforcement actions may occur at courthouses in certain circumstances. *See* 8 U.S.C. § 1229(e). Although Section 1229(e) imposes certification requirements in specified cases rather than independently

conferring arrest authority, its courthouse-specific language confirms that Congress did not impose a categorical bar on federal immigration enforcement actions at courthouses.

36. Neither Section 1226(a) nor Section 1357(a)(2) imposes Rule 2.10's geographic limitations on where federal agents may exercise their arrest authority or impose a judicial warrant requirement.

37. United States immigration law, taken together, codifies the Executive's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or are found to be, unlawfully in the United States. *See*, *e.g.*, 8 U.S.C. §§ 1182, 1225, 1226, 1226a, 1227, 1228, 1231, 1357.

## **FACTUAL BACKGROUND**

38. Acting on their congressionally authorized duty to conduct civil arrests at courthouses, ICE agents had arrested at least twelve individuals at FCMC in recent years.[2]

39. Those arrests were conducted in public areas of the court facility—areas where CSOs have authority to secure. Indeed, CSOs handle routine security operations at FCMC[3] and generally are charged with securing "each courtroom and the court facility." Ohio R. Super. 14.16 (A).

40. CSOs at FCMC also enforce other rules governing conduct in the courthouse. For example, those who fail to follow FCMC's policy regarding the use of electronic devices inside courtrooms may be "ejected" from the courthouse, and any device operated in violation of the Rule may be confiscated by courthouse security personnel. Franklin Cnty. Mun. Ct. Loc. R. 2.05 (D)(3).

[2] Carla Rogner, *Activists Push for Rule Change After 20 ICE Arrests at Franklin County Municipal Court in 2025*, 10 WBNS (Feb. 12. 2016), https://www.10tv.com/article/news/local/activists-push-rule-change-ice-arrests-franklin-county-municipal-court-2025/530-7e8858e2-e3a2-4656-bbc1-b77aa1b0440d.
[3] Franklin Cnty. Mun. Ct., *Security*, https://www.franklincountymunicourt.org/Departments/Security (last visited July 27, 2026).

41. When conducting operations in courthouses, ICE officers have consistently respected the integrity and decorum of judicial proceedings. They routinely coordinated and communicated with court security and staff to ensure that enforcement actions are carried out with minimal confrontation and minimal disruptions of court operations.

42. For example, in many cases, ICE officers coordinated with courthouse security to apprehend targeted noncitizens in secure, non-public areas, ensuring there was no disruption to ongoing court proceedings. Additionally, ICE officers generally plan any arrests to occur after hearings have concluded, so as not to impede legal proceedings.

43. After facing increased pressure to prevent ICE from executing civil arrest warrants in its courthouse, judges of the Franklin County Municipal Court began to discuss courthouse rule changes in January 2026 to address ICE enforcement in the courthouse.[4]

44. On March 11, 2026, FCMC published a proposed Rule 2.10 for public comment, with the comment period ending on April 8, 2026. Rule 2.10 was subsequently adopted a short time later. *See* Franklin Cnty. Mun. Ct. Loc. R. 2.10.

45. Rule 2.10(B)(1) provides that "[n]o individual shall be subject to a civil arrest while present in the courthouse for the purpose of attending a court proceeding or conducting other lawful court business."

46. Rule 2.10 defines "Courthouse" to mean "any building or space used by Franklin County Municipal Court along with the curtilage of the building." *Id*.

47. Rule 2.10 does not apply to arrests carried out pursuant to a judicial warrant issued by a judge. *Id*. (B)(2).

---

[4] *See* Bailey Gallion, *Franklin County Municipal Court Proposes Rule to Prevent ICE Arrests*, THE COLUMBUS DISPATCH (Mar. 11, 2026), https://www.dispatch.com/story/news/crime/2026/03/11/franklin-county-municipal-court-publishes-rule-aimed-to-curb-ice-arrests/89097685007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z1143xxp117850l004450c117850e1143xxv006485d--49--b--49--&gca-ft=181&gca-ds=sophi.

48. Rule 2.10 thus purports to limit the circumstances in which federal officers can execute arrests pursuant to federal law.

49. Rule 2.10(A) includes a Statement of Purpose:

> The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.
>
> Courts possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled, or impeded therein by other branches of the government.

50. Finally, the Statement of Purpose concludes with a self-incriminating disclaimer stating that "[n]othing in this rule shall be construed so as to violate any provision of the Supremacy Clause of the United States Constitution or any federal immigration law." *Id.* (A).

51. Relatedly, when responding to media inquiries about Rule 2.10, Presiding Judge D'Varga claimed that the FCMC bench maintains "compliance with applicable state and federal law."[5]

52. To the contrary, the Rule brazenly violates the Supremacy Clause and directly conflicts with federal immigration law.

53. Congress's comprehensive scheme governing federal immigration agents' arrest authority authorizes federal agents to make arrests based on only an administrative warrant—or without a warrant—if certain statutory requirements are met. And another INA provision expressly contemplates that immigration enforcement actions may take place at state courthouses. *See* 8 U.S.C. § 1229(e)(2)(B).

[5] Bailey Gallion, *Can ICE Make Arrests in Franklin County Courts? Municipal Court Changes Rules*, THE COLUMBUS DISPATCH (Mar. 9, 2026), https://www.dispatch.com/story/news/courts/2026/03/09/ice-arrests-could-be-curtailed-at-franklin-county-municipal-court/89019513007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z1115xxp118950l003350c118950e1115xxv006988d--49--b--49--&gca-ft=169&gca-ds=sophi.

54. Rule 2.10 is thus directly at odds with this scheme: it purports to impose a judicial-warrant requirement in circumstances where federal law does not require one.

55. For more than a decade, and across presidential administrations, ICE has exercised its civil arrest authority to arrest aliens in and around courthouses. For instance, in 2014, ICE issued guidance authorizing agents to take enforcement actions "at or near courthouses" against certain high-priority aliens, including aliens with criminal convictions, aliens who have participated in gang activity, and aliens who are national security threats. Memorandum from Philip T. Miller, Assistant Dir. for Field Operations, U.S. ICE, *Enforcement Actions at or Near Courthouses* (Mar. 19, 2014).

56. The operative ICE guidance issued in 2021 similarly authorizes enforcement actions "in or near a courthouse" in certain circumstances, including "against an individual who poses a threat to public safety" if "it is necessary to take due action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location." Memorandum from Tae Johnson, Acting Dir., U.S. ICE, *Civil Immigration Actions in or Near Courthouses* (Apr. 27, 2021), https://perma.cc/D3VJ-U3UG.

57. Thus, Rule 2.10 not only impedes Congress's comprehensive immigration enforcement scheme, but it also flies in the face of the Executive Branch's longstanding practices with respect to carrying out its civil arrest authority at courthouses across the country.

58. Even setting aside Rule 2.10's encroachment on federal prerogatives, it is remarkably broad in scope, covering all individuals who are "present in the courthouse" for the purpose of "attending a court proceeding or conducting other lawful court business," apparently irrespective of whether such persons are "attending" because they are the subject

of a court proceeding. Franklin Cnty. Mun. Ct. Loc. R. 2.10(B)(1). On a straightforward reading, Rule 2.10 effectively immunizes from civil arrest even illegal aliens who might attempt to evade federal law enforcement by "attending" court proceedings under the guise of a mere observer. That cannot stand.

59. FCMC has no lawful interest in assisting these illegal aliens' evasion of federal law enforcement and otherwise has no authority to promulgate rules that regulate and undermine federal law enforcement operations.

**FCMC's Violation of the Constitution and Federal Law**

60. Rule 2.10 is invalid under both intergovernmental immunity and preemption principles for the same basic reason: it attempts to undermine the "supremacy of the national power" on matters of "immigration, naturalization and deportation." *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941).

61. First, Rule 2.10 conflicts with Congress's "extensive and complex" framework governing aliens' entry, apprehension, detention, and removal. *Arizona*, 567 U.S. at 395. Congress has "instruct[ed] when it is appropriate to arrest an alien during the removal process." *Id.* at 407. Section 1226 of the INA authorizes federal agents to "arrest[] and detain[]" an alien pending a removability determination if the agent has obtained an administrative warrant issued by federal immigration officials. 8 U.S.C. § 1226(a). And Section 1357 authorizes federal agents to make arrests without any warrant if there is reason to believe the alien is unlawfully present in the United States and "is likely to escape before a warrant can be obtained." *Id*. § 1357(a)(2). Indeed, the INA *requires* federal agents to detain aliens in certain circumstances, such as when an alien has committed certain crimes and is released from custody. *See, e.g.*, *id.* §§ 1226(c), 1231(a)(2).

62. Rule 2.10 purports to superimpose a judicial-warrant requirement in circumstances where the INA would require only an administrative warrant—or no warrant at all.

63. By displacing Congress's judgment about the requirements for federal immigration agents to arrest aliens during the removal process, Rule 2.10 "creates an obstacle to the full purposes and objectives of Congress" and "is preempted by federal law." *Arizona,* 567 U.S. at 410.

64. Second, Rule 2.10's civil-arrest restrictions violate principles of intergovernmental immunity because they purport to regulate the United States Government's federal functions. For more than two centuries, the Supreme Court has repeatedly held that, absent express congressional authorization, states (and by extension, local entities) have no authority to directly regulate the Federal Government. Yet Rule 2.10 seeks to regulate the United States directly: it requires federal immigration agents to obtain a judicial warrant to arrest unlawfully present aliens in certain circumstances where federal law does not.

65. As the Supreme Court also has recognized, "the removal process is entrusted to the discretion of the Federal Government." *Id.* at 409. That principle cannot be reconciled with FCMC's effort to impose constraints on federal immigration agents' arrest authority that Congress has chosen not to impose in the INA.

**Rule 2.10 Harms the Federal Government and the Public**

66. Rule 2.10 violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States. *Cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985).

67. Civil immigration arrests implicate "uniquely sovereign interests" in "controlling immigration and the presence of noncitizens in the country." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 27, 28 (1st Cir. 2020). Indeed, Rule 2.10 targets an exclusively sovereign function and substitutes FCMC's judgment over the judgment of federal officers.

68. The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to FCMC by capitulating to Rule 2.10's purported requirements for federal law enforcement officers.

69. Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, compliance with Rule 2.10 increases costs, endangers officers, and reduces operational effectiveness by subjecting federal officers to a rule that conflicts with and differs materially from applicable federal law and well-established practices.

70. Moreover, a person who disobeys a court rule that FCMC regards as lawful may face contempt under Ohio law. Ohio Rev. Code § 2705.02(A). A first offense may carry a fine of up to $250, up to 30 days' imprisonment, or both—with later offenses carrying greater penalties. *Id.* § 2705.05(A). Ohio law also gives FCMC the power to punish contempt. *Id.* § 1901.13(A)(1). In other words, Rule 2.10 backs its command with coercive civil and criminal penalties.

71. Being forced to conduct arrests in the community at large, rather than within the safe confines of a courthouse, not only endangers officers and the general public, but requires more agency resources, time, and precautions.

72. Indeed, the restriction imposed by the FCMC Rule 2.10 has required ICE to allocate additional resources to apprehend aliens at large. These at-large arrests occur in public spaces such as workplaces or homes, where the subject may be armed, violent, or otherwise dangerous.

73. The consequences of Rule 2.10's restrictions have been dire: two Columbus ICE officers have been hospitalized due to violence encountered during at-large arrests within the past three months.

74. At present, federal law enforcement officers are operating in an increasingly hostile environment, facing heightened threats, assaults, and incidents of online doxing that endanger both their safety and that of their families.

75. Conducting arrests in courthouses, rather than in public settings, helps minimize unnecessary publicity and reduces the risk of exposure to these doxing threats to ICE officers. In 2026 alone, multiple ICE officers in the Columbus, Ohio sub-office have had pictures and videos taken during enforcement operations posted online, including with comments that threatened violence.

76. Moreover, officers are now conducting extended surveillance and field operations to locate and arrest individuals, as opposed to effectuating arrests at courthouses, which would present a more efficient and secure alternative. Naturally, extended surveillance operations require additional personnel, vehicles, equipment, and overtime compensation, increasing operational costs.

77. As a result of Rule 2.10's restrictions, ICE has been forced to divert resources from other enforcement priorities. For example, two officers may be assigned to effectuate an arrest at a jail or courthouse, whereas four to six officers are typically required to make an at-large arrest in the field.

78. The unpredictability of locating subjects outside the courthouse can also lead to missed apprehensions, as individuals may change routines or actively evade detection.

79. Since the implementation of Rule 2.10, ICE has made no civil immigration arrests at FCMC.

80. If ICE were permitted to conduct arrests within the Municipal Court, officers could again safely apprehend targeted individuals in a controlled setting, minimizing risks to the community.

81. These injuries are caused by Rule 2.10 and would be redressed by an order preventing Defendants from administering or enforcing the Rule against the United States and its officers. Indeed, FCMC has no authority to deliberately obstruct the enforcement of federal law in this manner. It is a fundamental Supremacy Clause principle that no state or local interest—regardless of how strong—can justify state laws or local rules that regulate the Federal Government's operations or conflict with a federal statutory framework Congress has established. Indeed, "[a] state regulation can violate the Supremacy Clause either by directly regulating the federal government or by conflicting with an affirmative command of Congress." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 36 F.4th 686, 697 (6th Cir. 2022) (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 426 (1819)).

82. But for Rule 2.10, the United States would continue to engage in conduct proscribed by Rule 2.10, to wit civil immigration arrests in and around FCMC.

83. The United States is irreparably harmed by laws that violate the Supremacy Clause, especially those that regulate core federal functions or impinge on the ability of the United States to carry out its functions through its Executive agencies. These harms are further heightened in the context of its sovereign functions related to public safety and national security, such as federal immigration enforcement.

84. There is no other adequate remedy at law.

85. The public interest favors preserving the constitutional limits on local authority over the Federal Government and allowing federal officers to perform their congressionally mandated duties safely and effectively.

86. The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

## CLAIMS FOR RELIEF

### COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

87. Plaintiff hereby incorporates paragraphs 1 through 86 of the Complaint as if fully stated herein.

88. Rule 2.10 violates the doctrine of intergovernmental immunity by unlawfully regulating the Federal Government. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).

89. Rule 2.10 attempts to dictate where federal agents can effectuate arrests and require immigration officers to obtain judicial warrants not required by federal law.

90. Accordingly, Rule 2.10 unlawfully regulates the Federal Government in violation of the Supremacy Clause and is invalid as to the Federal Government.

### COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE (PREEMPTION)

91. Plaintiff hereby incorporates paragraphs 1 through 86 of the Complaint as if fully stated herein.

92. The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

93. Franklin County Municipal Court's Rule 2.10 "stand[s] as an obstacle to the accomplishment and execution" of the federal immigration laws and therefore is conflict

preempted. *Arizona*, 567 U.S. at 406 (citation omitted). Specifically, Rule 2.10 purports to dictate the locations in which immigration officers perform their federal functions and require them to obtain judicial warrants not required by federal law, thereby impeding those officers' ability to discharge their official duties.

94. Accordingly, Rule 2.10 violates the Supremacy Clause and is invalid as to the Federal Government.

**PRAYER FOR RELIEF**

The United States respectfully requests the following relief:

A. That this court enter a judgment declaring that FCMC's Rule 2.10 violates the Supremacy Clause and therefore is unlawful and unenforceable as to the Federal Government;

B. That this Court preliminarily and permanently enjoin Defendants—as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control—from enforcing FCMC's Rule 2.10 against the Federal Government;

C. That this Court award the United States its fees and costs in this action; and

D. That this Court award any other relief it deems just and proper.

DATED: August 25, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

CHARLES E.T. ROBERTS
Senior Counsel to the Assistant Attorney General
Civil Division

JACQUELINE COLEMAN SNEAD
Deputy Director

*/s/ Garrett Greene*
Senior Litigation Counsel (TX Bar No. 24096217)
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 549-9429
garrett.greene@usdoj.gov

*Attorneys for the United States of America*