EXHIBIT K

(122nd General Assembly)
(Amended Substitute House Bill Number 649)

# AN ACT

To amend sections 101.23, 101.271, 101.272, 101.29, 101.31, 101.32, 101.33, 101.51, 101.52, 101.55, 101.61, 101.63, 101.65, 101.66, 101.69, 102.09, 103.15, 121.40, 123.151, 124.18, 125.081, 125.31, 125.42, 125.47, 125.48, 125.58, 125.76, 127.16, 129.52, 129.56, 129.64, 149.07, 149.09, 149.091, 149.13, 149.17, 164.11, 1555.14, 2331.11, 3317.09, 4121.03, 5117.12, 5119.39, 5123.231, 5528.19, and 5528.56; to amend, for the purpose of adopting new section numbers as indicated in parentheses, sections 101.51 (101.531), 101.52 (101.53), 101.55 (101.532), 101.61 (101.54), 101.63 (101.541), 101.65 (101.542), and 101.66 (101.543); to enact new sections 101.25, 101.51, and 101.52, and sections 101.521, 101.522, 101.523, and 101.524; and to repeal sections 101.25, 101.50, 101.53, 101.62, 101.64, 101.67, 125.59, 125.60, 125.63, and 149.06 of the Revised Code and to amend Section 192 of Am. Sub. H.B. 215 of the 122nd General Assembly to improve operations of the General Assembly by permitting members to resign without a vote of acceptance, modernizing the legislative printing laws, transferring responsibility for preservation of the final journals to the Ohio Historical Society, retitling the Legislative Clerk of the House as the Clerk of the House, retitling the Executive Secretary of the House as the Chief Administrative Officer of the House, updating the mileage paid to certain officers of the Senate and House, clarifying that only the principal sergeant at arms is to be paid mileage, and modernizing the law establishing

privilege from arrest.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 101.23, 101.271, 101.272, 101.29, 101.31, 101.32, 101.33, 101.51, 101.52, 101.55, 101.61, 101.63, 101.65, 101.66, 101.69, 102.09, 103.15, 121.40, 123.151, 124.18, 125.081, 125.31, 125.42, 125.47, 125.48, 125.58, 125.76, 127.16, 129.52, 129.56, 129.64, 149.07, 149.09, 149.091, 149.13, 149.17, 164.11, 1555.14, 2331.11, 3317.09, 4121.03, 5117.12, 5119.39, 5123.231, 5528.19, and 5528.56 be amended; sections 101.51 (101.531), 101.52 (101.53), 101.55 (101.532), 101.61 (101.54), 101.63 (101.541), 101.65 (101.542), and 101.66 (101.543) be amended for the purpose of adopting new section numbers as indicated in parentheses; and new sections 101.25, 101.51, and 101.52 and sections 101.521, 101.522, 101.523, and 101.524 of the Revised Code be enacted to read as follows:

Sec. 101.23. The oath of office of senators and representatives, the president and president pro tempore of the senate, the speaker and speaker pro tempore of the house of representatives, and the clerk of the senate, ~~executive secretary~~ the chief administrative officer and ~~legislative~~ the clerk of the house of representatives, and their assistants, and the sergeant at arms~~,~~ and assistant sergeant at arms of each house~~,~~ may be administered by a member or by a person authorized to administer oaths.

Sec. 101.25. During a regular session of the general assembly, a senator WHO DESIRES TO resign SHALL DO SO by presenting a letter of resignation to the president of the senate and a representative WHO DESIRES TO resign SHALL DO SO by presenting a letter of resignation to the speaker of the house of representatives. The president or speaker shall verify authenticity of the letter of resignation and, upon doing so, shall send a letter of acknowledgment to the resigning senator or representative.

When the general assembly has adjourned its regular session sine die, a senator or representative WHO DESIRES TO resign SHALL DO SO by presenting a letter of resignation to the governor. The governor shall verify authenticity of the letter of resignation and, upon doing so, shall send a letter of acknowledgement to the resigning senator or representative.

An acknowledged resignation takes effect at the time specified in the letter of resignation. If an acknowledged resignation occurs during a regular session of the general assembly, the clerk of the senate or clerk of the house of representatives shall spread the letter of resignation upon the senate or

house of representatives journal.

This section does not apply to a member-elect who resigns before the general assembly has organized.

Sec. 101.271. (A) As used in this section, "medical insurance premium" means any premium payment made under a contract with an insurance company, nonprofit health plan, health insuring corporation, or any combination of such organizations, pursuant to section 124.82 of the Revised Code.

(B) After the general election in each even-numbered year, the clerk of the senate, with the assistance of the department of administrative services, shall estimate the cost of the medical insurance premiums that will be necessary to provide coverage, on the same basis as for a similarly situated state employee, for each person who is elected to a term as senator at such election, or appointed to fill the unexpired portion of any such term, and any of the senator's dependents qualified for coverage at the time the senator assumes office. Using this estimate, the clerk shall determine a fixed amount to be paid by the state in equal monthly installments on behalf of the senator each year of the senator's term as a medical insurance premium, but in no event in an amount to exceed the total premium required in any month by the contract of the state by the carrier. Any amount not paid in such a case shall be placed in reserve and applied against any subsequent month's premium up to the full amount thereof until the entire amount has been paid along with the original estimate for each month. This fixed amount shall be such that, as nearly as can be predicted, the sum of the monthly premiums paid for the senator during the senator's term shall equal the total amount of medical insurance premiums that will be paid for such an employee, as required by section 124.82 of the Revised Code, during that term. The senator shall pay the difference between the amount so fixed and the total premium required by the contract of the state with the carrier.

(C) After the general election in each even-numbered year, the ~~executive secretary~~ chief administrative officer of the house of representatives, with the assistance of the department of administrative services, shall estimate the cost of the medical insurance premiums that will be necessary to provide coverage, on the same basis as for a similarly situated state employee, for each person who is elected to a term as representative at such election, or appointed to fill the unexpired portion of any such term, and any of the representative's dependents qualified for coverage at the time the representative assumes office. Using this estimate, the ~~executive secretary~~ chief administrative officer shall determine a fixed amount to be paid by the state in equal monthly installments on behalf of the

representative each year of the representative's term as a medical insurance premium, but in no event in an amount to exceed the total premium required in any month by the contract of the state with the carrier. Any amount not paid in such a case shall be placed in reserve and applied against any subsequent month's premium up to the full amount thereof until the entire reserve has been paid along with the original estimate for each month. This fixed amount shall be such that, as nearly as can be predicted, the sum of the monthly premiums paid for the representative during the representative's term shall equal the total amount of medical insurance premiums that will be paid for such an employee, as required by section 124.82 of the Revised Code, during that term. The representative shall pay the difference between the amount so fixed and the total premium required by the contract of the state with the carrier.

Sec. 101.272. (A) The house reimbursement fund is hereby created in the state treasury. The fund shall consist of refunds from the department of administrative services of overpayments of medical insurance premiums accumulated under division (C) of section 101.271 of the Revised Code; amounts received by the ~~house executive secretary's~~ office of the chief administrative officer of the house of representatives for salvage and recycling of equipment, materials, and supplies; and payments from members and employees for incidental use of house equipment or facilities. The fund shall be used to pay operating expenses of the house of representatives.

(B) The senate reimbursement fund is hereby created in the state treasury. The fund shall consist of refunds from the department of administrative services of overpayments of medical insurance premiums accumulated under division (B) of section 101.271 of the Revised Code; amounts received by the senate clerk's office for salvage and recycling of equipment, materials, and supplies; and payments from members and employees for incidental use of senate equipment or facilities. The fund shall be used to pay operating expenses of the senate.

Sec. 101.29. The senate and the house of representatives shall choose their own officials and employees, respectively, and fix their compensation. The clerk of the senate, ~~executive secretary~~ the chief administrative officer and ~~legislative~~ the clerk of the house of representatives, and the principal sergeants at arms designated by the respective houses shall receive ~~ten cents~~ a travel allowance per mile each way twice a month from and to their place of residence, if outside Franklin county, by the most direct highway route of public travel, to be paid monthly, at the same mileage rate allowed for the reimbursement of travel expenses of state agents as provided by rule of the

director of budget and management adopted pursuant to division (B) of section 126.31 of the Revised Code.

The sentence of this section requiring payment for mileage does not include the assistant sergeants at arms designated by the senate and house of representatives.

Sec. 101.31. The clerk of the senate, ~~executive secretary~~ the chief administrative officer and ~~legislative~~ the clerk of the house of representatives, and the sergeant at arms of each house shall be present and assist in the organization of the next succeeding general assembly.

Sec. 101.32. The clerk of the senate ~~and executive secretary~~, the chief administrative officer of the house of representatives, and the sergeant at arms of each house shall have control of their respective assistants, and each house by resolution may dismiss any of them whose services are not needed~~,~~ or who do not perform their duties satisfactorily.

Sec. 101.33. During the absence or disability of the clerk of the senate, ~~legislative~~ clerk of the house of representatives, or sergeant at arms of either house, the respective house of the general assembly may constitute one of the assistant clerks, clerk pro tempore ~~or legislative clerk pro tempore~~, or one of the assistant sergeant at arms, sergeant at arms pro tempore, and the assistant so appointed shall have the powers to perform the duties required of ~~his~~ the assistant's principal.

Sec. 101.51. As used in sections 101.51 to 101.543 of the Revised Code:

(A) "Composition" includes shape, size, paper, typeface, typeface size, line width, margins, spacing, division, binding, and other matters relating to the makeup of a document.

(B) "Document" means a bill, act, resolution, journal, pamphlet law, bulletin, index, report, form, or other document that is used in the proceedings or operations of, or that is laid before, the senate or house of representatives.

(C) "Method of printing" means a method of printing that mechanically or electronically produces or reproduces a document by completely and accurately transferring to paper or to electronic memory, the characters of which the text of the document is composed.

Sec. 101.52. The clerk of the senate and the clerk of the house of representatives are custodians of the documents in possession of the senate or house of representatives, and are responsible for the printing of a document when its printing becomes necessary in the course of the proceedings or operations of the clerk's respective house. The clerk shall discharge this responsibility for printing, whether for a particular document or for a particular class of documents, by printing the document internally in

the clerk's office, by contracting with a private printer outside the clerk's office, by participating in the public printing services provided by the department of administrative services, or by requesting the director of administrative services to let a contract for the printing. In choosing among these methods of printing a document or class of documents, the clerk shall not select a method unless it reasonably appears under the circumstances that the method will enable the clerk successfully and efficiently to discharge the clerk's responsibility for printing the document or class of documents.

Sec. 101.521. If the clerk of the senate or the clerk of the house of representatives prints a document or class of documents internally in the clerk's office, the clerk shall compose the document and select the method of printing to be used. Except for matters of composition and quantity prescribed by law, by rule of the senate or house of representatives, by joint rule of both houses, or by order of the senate or house of representatives, the clerk, taking into consideration means of effectively communicating the content of the document, shall determine the composition of the document, and, taking into consideration the uses to which the document foreseeably is to be put, shall determine the approximate quantity of the document to be printed.

Sec. 101.522. If the clerk of the senate or the clerk of the house of representatives contracts with a private printer outside the clerk's office to print a document or class of documents, the clerk shall negotiate and agree with the printer upon those terms as are necessary and proper with respect to the printing job being contracted for. The terms are to include provisions with respect to:

(A) Composition of the document, reflecting means of effectively communicating the content of the document, subject to matters of composition prescribed by law, by rule of the senate or house of representatives, by joint rule of both houses, or by order of the senate or house of representatives;

(B) Method of printing to be used;

(C) Delivery to the clerk of proof sheets, return to the printer of corrected proofs, and making of corrections;

(D) Approximate quantity to be printed, reflecting the uses to which the document foreseeably is to be put, subject to matters of quantity prescribed by law, by rule of the senate or house of representatives, by joint rule of both houses, or by order of the senate or house of representatives;

(E) Deadlines;

(F) Compensation to be paid to the printer for services rendered and

materials provided, and any liquidated damages to be charged against the printer for misfeasance or nonfeasance;

(G) Term of the contract; and

(H) Other matters as are necessary and proper for efficient, timely, and successful performance of the printing job.

Sec. 101.523. If the clerk of the senate or the clerk of the house of representatives prints a document or class of documents by participating in the public printing services provided by the department of administrative services, the clerk shall negotiate and agree with the director of administrative services with respect to the printing services the department is to provide to the clerk. Terms of participation, except as may be limited by the law governing the department's public printing services, are the same as those to be included in a contract with a private printer. The clerk and the director shall memorialize their agreement in a memorandum.

Sec. 101.524. Upon request of the clerk of the senate or the clerk of the house of representatives to let a contract for printing, the director of administrative services shall negotiate and enter into a contract for the printing requested by the clerk.

Sec. ~~101.52~~ 101.53. ~~After passage and before enrollment, bills shall be printed in ten point type on pages containing seven and one-half by four and one-half inches of solid matter, on paper specified by the state in its notice for proposals for state printing.~~ Bills shall be printed in the exact language in which they were passed, under the supervision of the clerk of the house in which they originated. New matter shall be indicated by capitalization and old matter omitted by striking through such matter. Prior capitalization in a Revised Code section shall be indicated by italicized type.

~~Five copies of each bill shall be printed in a form suitable for distribution as enrolled bills and not less than one thousand nor more than six thousand copies of each bill shall be printed in a form suitable for distribution as pamphlet laws. The pamphlet laws shall be prepared as follows:~~

~~(A) Copies in such number as may be agreed upon by the clerk of the senate and the executive secretary of the house, but in no case shall more than five thousand be printed and apportioned among the senators and representatives;~~

~~(B) Five hundred copies for distribution by the secretary of state.~~

Sec. ~~101.51~~ 101.531. ~~The bills and resolutions shall be printed in ten point type and each page shall contain not less than thirty lines of solid matter four and one-half inches in length, with eighteen points of open space between the lines.~~ The material used in printing ~~the bill~~ bills shall be held

and used to print ~~the~~ pamphlet laws ~~provided for in section 101.52 of the Revised Code~~ and the session laws ~~provided for in section 149.091 of the Revised Code~~. The lines of each bill shall be numbered.

Sec. ~~101.55~~ 101.532. The main operating appropriations bill shall not contain appropriations for the industrial commission or the bureau of workers' compensation. Appropriations for these two agencies shall be enacted in separate ~~legislation~~ bills.

Sec. ~~101.61~~ 101.54. The clerk of the senate and the ~~legislative~~ clerk of the house of representatives shall keep a daily journal of the proceedings of ~~his~~ the clerk's house of the general assembly, which shall be read and corrected in ~~his~~ the clerk's presence. After the reading, correction, and approval of the journal, it shall be attested by the clerk ~~or legislative clerk~~ and recorded ~~in books furnished by the secretary of state~~. The recorded journals shall be deposited with the ~~secretary of state,~~ Ohio historical society and be the true journals. The original daily journal, as kept, corrected, approved, and attested, shall be ~~delivered~~ used by the clerk ~~or legislative clerk~~ to ~~the printer of~~ print the journals ~~for his use in printing them. The clerk or legislative clerk shall read and correct the proof sheets, carefully compare them with the recorded journals, and correct any errors~~.

Sec. ~~101.63~~ 101.541. ~~Six hundred copies of the journals of the senate and house of representatives respectively shall be printed.~~ To each ~~printed~~ final journal there shall be an appendix of petitions and memorials, reports of committees, special reports, communications of officers or boards, and other papers and documents laid before either or both houses. ~~No such paper or document shall be printed in either appendix unless ordered by the house before which it is laid. If a paper or document is laid before both houses, and ordered printed by both, it shall be printed only in the appendix to the senate journal.~~ The abstract of votes for governor and other state officers shall be printed in the appendix to the senate journal. The standing rules shall be printed in the appendix to each journal.

Sec. ~~101.65~~ 101.542. The clerk of the senate and the ~~legislative~~ clerk of the house of representatives shall make an index to the ~~journal kept by him~~ journals of the senate and house of representatives, and an index ~~of its appendix, and deliver them to the printer, who~~ to the appendix to both journals. The clerk of the senate and the clerk of the house of representatives shall print ~~them at the end of the proper volumes. The clerk of the senate and the legislative clerk of the house of representatives shall make an index to the recorded journal and deliver it to the secretary of state, who shall preserve it with the recorded journal~~ the indexes in the appendix to the final senate and house of representatives journals.

Sec. ~~101.66~~ 101.543. The daily senate and house of representatives journals shall be printed daily during each session of the general assembly in pamphlet form without covers. The senate journal shall precede the house of representatives journal in the pamphlet. The composition used in printing the daily journals shall be retained for use in printing the final journals.

The final senate and house of representatives journals and appendixes shall be printed after adjournment sine die and be bound in half law binding. ~~Each~~ The respective journal of each house and its proper appendix shall compose one volume unless the ~~secretary of state~~ clerk of the senate or clerk of the house of representatives, as the case may be, directs that they be bound in separate volumes.

Sec. 101.69. All money collected by the senate clerk's office from the sale of flags, insignia, seals, frames for resolutions, and similar items shall be deposited in the state treasury to the credit of the senate miscellaneous sales fund, which is hereby created. Money credited to the fund shall be used solely to pay costs of procuring such items. Any costs of procuring such items in excess of the money available in the fund shall be paid out of the regular appropriation to the senate.

All money collected by the ~~house executive secretary's~~ office of the chief administrative officer of the house of representatives for the sale of flags, insignia, seals, frames for resolutions, and similar items shall be deposited in the state treasury to the credit of the house miscellaneous sales fund, which is hereby created. Money credited to the fund shall be used solely to pay costs of procuring such items. Any costs of procuring such items in excess of the money available in the fund shall be paid out of the regular appropriation to the house of representatives.

Sec. 102.09. (A) The secretary of state and the county board of elections shall furnish, to each candidate for elective office who is required to file a financial disclosure statement by section 102.02 of the Revised Code, a financial disclosure form, and shall notify the appropriate ethics commission, within fifteen days of the name of the candidate, and of the subsequent withdrawal, disqualification, or death of the candidate. The candidate shall acknowledge receipt of the financial disclosure form in writing.

(B) The secretary of state and the county board of elections shall furnish to each person who is appointed to fill a vacancy for an unexpired term in an elective office, and who is required to file a financial disclosure statement by section 102.02 of the Revised Code, a financial disclosure form, and shall notify the appropriate ethics commission within fifteen days of being notified by the appointing authority, of the name and position of the public

official and the date of appointment. The person shall acknowledge receipt of the financial disclosure form in writing.

(C) The public agency or appointing authority that employs, appoints, or promotes any public official or employee who, as a result of such employment, appointment, or promotion, is required to file a financial disclosure statement by section 102.02 of the Revised Code, shall, within fifteen days of the employment, appointment, or promotion, furnish the public official or employee with a financial disclosure form, and shall notify the appropriate ethics commission of the name and position of the public official or employee and the date of employment, appointment, or promotion. The public official or employee shall acknowledge receipt of the financial disclosure form in writing.

(D) ~~The clerk of the senate and executive secretary of the house of representatives shall distribute to every member of his respective house prior to the first day of February a copy of the form for filing the financial disclosure statement under section 102.02 of the Revised Code. The member shall acknowledge his receipt in writing.~~

~~(E)~~ Within fifteen days after any public official or employee begins the performance of ~~his~~ official duties, the public agency with which ~~he~~ the official or employee serves or the appointing authority shall furnish ~~him~~ the official or employee a copy of Chapter 102. and section 2921.42 of the Revised Code, and may furnish such other materials as the appropriate ethics commission prepares for distribution. The official or employee shall acknowledge their receipt in writing. The requirements of this division do not apply at the time of reappointment or reelection.

Sec. 103.15. At the close of each second regular session of the general assembly, the clerk of the senate and the ~~legislative~~ clerk of the house of representatives shall deliver to the director of the Ohio legislative service commission copies of all bills, joint resolutions, important petitions, memorials, and other legislative ~~document~~ documents passed or presented during each session of the general assembly.

Sec. 121.40. (A) There is hereby created the governor's community service council consisting of twenty-one members including the superintendent of public instruction or the superintendent's designee, the chancellor of the Ohio board of regents or the chancellor's designee, the director of natural resources or the director's designee, the director of youth services or the director's designee, the director of aging or the director's designee, the director of human services or the director's designee, the chairperson of the committee of the house of representatives dealing with education or the chairperson's designee, the chairperson of the committee of

the senate dealing with education or the chairperson's designee, and thirteen members who shall be appointed by the governor with the advice and consent of the senate and who shall serve terms of office of three years. The appointees shall include educators, including teachers and administrators; representatives of youth organizations; students and parents; representatives of organizations engaged in volunteer program development and management throughout the state, including youth and conservation programs; and representatives of business, government, nonprofit organizations, social service agencies, veterans organizations, religious organizations, or philanthropies that support or encourage volunteerism within the state. Members of the council shall receive no compensation, but shall be reimbursed for actual and necessary expenses incurred in the performance of their official duties.

(B) The council shall appoint an executive director for the council, who shall be in the unclassified civil service. The executive director shall supervise the council's activities and report to the council on the progress of those activities. The executive director shall do all things necessary for the efficient and effective implementation of the duties of the council.

The responsibilities assigned to the executive director do not relieve the members of the council from final responsibility for the proper performance of the requirements of this division.

(C) The council or its designee shall do all of the following:

(1) Employ, promote, supervise, and remove all employees as needed in connection with the performance of its duties under this section and may assign duties to those employees as necessary to achieve the most efficient performance of its functions, and to that end may establish, change, or abolish positions, and assign and reassign duties and responsibilities of any employee of the council. Personnel employed by the council who are subject to Chapter 4117. of the Revised Code shall retain all of their rights and benefits conferred pursuant to that chapter. Nothing in this chapter shall be construed as eliminating or interfering with Chapter 4117. of the Revised Code or the rights and benefits conferred under that chapter to public employees or to any bargaining unit.

(2) Maintain its office in Columbus, and may hold sessions at any place within the state;

(3) Acquire facilities, equipment, and supplies necessary to house the council, its employees, and files and records under its control, and to discharge any duty imposed upon it by law. The expense of these acquisitions shall be audited and paid for in the same manner as other state expenses. For that purpose, the council shall prepare and submit to the office

of budget and management a budget for each biennium according to sections ~~101.55~~ 101.532 and 107.03 of the Revised Code. The budget submitted shall cover the costs of the council and its staff in the discharge of any duty imposed upon the council by law. The council shall not delegate any authority to obligate funds.

(4) Pay its own payroll and other operating expenses from line items designated by the general assembly;

(5) Retain its fiduciary responsibility as appointing authority. Any transaction instructions shall be certified by the appointing authority or its designee.

(6) Establish the overall policy and management of the council in accordance with this chapter;

(7) Assist in coordinating and preparing the state application for funds under sections 101 to 184 of the "National and Community Service Act of 1990," 104 Stat. 3127 (1990), 42 U.S.C.A. 12411 to 12544, and amendments thereto, assist in administering and overseeing the "National and Community Service Trust Act of 1993," P.L. 103-82, 107 Stat. 785, and the americorps program in this state, and assist in developing objectives for a comprehensive strategy to encourage and expand community service programs throughout the state;

(8) Assist the state board of education, school districts, the board of regents, and institutions of higher education in coordinating community service education programs through cooperative efforts between institutions and organizations in the public and private sectors;

(9) Assist the departments of natural resources, youth services, aging, and human services in coordinating community service programs through cooperative efforts between institutions and organizations in the public and private sectors;

(10) Suggest individuals and organizations that are available to assist school districts, institutions of higher education, and the departments of natural resources, youth services, aging, and human services in the establishment of community service programs and assist in investigating sources of funding for implementing such programs;

(11) Assist in evaluating the state's efforts in providing community service programs using standards and methods that are consistent with any statewide objectives for such programs and provide information to the state board of education, school districts, the board of regents, institutions of higher education, and the departments of natural resources, youth services, aging, and human services to guide them in making decisions about these programs;

(12) Assist the state board of education in complying with section 3301.70 of the Revised Code and the board of regents in complying with division (B)(2) of section 3333.043 of the Revised Code.

(D) The department of aging shall serve as the council's fiscal agent. Beginning on July 1, 1997, whenever reference is made in any law, contract, or document to the functions of the department of youth services as fiscal agent to the council, the reference shall be deemed to refer to the department of aging. The department of aging shall have no responsibilty for or obligation to the council prior to July 1, 1997. Any validation, cure, right, privilege, remedy, obligation, or liability shall be retained by the council.

As used in this section, "fiscal agent" means technical support and includes the following technical support services:

(1) Preparing and processing payroll and other personnel documents that the council executes as the appointing authority. The department of aging shall not approve any payroll or other personnel-related documents.

(2) Maintaining ledgers of accounts and reports of account balances, and monitoring budgets and allotment plans in consultation with the council. The department shall not approve any biennial budget, grant, expenditure, audit, or fiscal-related document.

(3) Performing other routine support services that the director of aging or the director's designee and the council or its designee consider appropriate to achieve efficiency.

(E) The council or its designee has the following authority and responsibility relative to fiscal matters:

(1) Sole authority to draw funds for any and all federal programs in which the council is authorized to participate;

(2) Sole authority to expend funds from their accounts for programs and any other necessary expenses the council may incur and its subgrantees may incur;

(3) Responsibility to cooperate with and inform the department of aging as fiscal agent to ensure that the department is fully apprised of all financial transactions.

The council shall follow all state procurement requirements.

The department of aging shall determine fees to be charged to the council, which shall be in proportion to the services performed for the council.

The council shall pay fees owed to the department of aging from a general revenue fund of the council or from any other fund from which the operating expenses of the council are paid. Any amounts set aside for a fiscal year for the payment of such fees shall be used only for the services

performed for the council by the department of aging in that fiscal year.

Sec. 123.151. (A) As used in this section, "minority business enterprise" has the meaning given in division (E)(1) of section 122.71 of the Revised Code.

(B)(1) The director of administrative services shall make rules in accordance with Chapter 119. of the Revised Code establishing procedures by which minority businesses may apply to the equal employment opportunity coordinator for certification as minority business enterprises.

(2) Any minority business enterprise that desires to bid on a contract under division (C)(1) or (D)(1) of this section or to be a minority business subcontractor or ~~materialman~~ materials supplier under division (C)(2) or (D)(2) of this section shall first apply to the coordinator for certification. The coordinator shall approve the application of any minority business enterprise that complies with the rules adopted under this division. Any person adversely affected by an order of the coordinator denying certification as a minority business enterprise may appeal as provided in Chapter 119. of the Revised Code. The coordinator shall prepare and maintain a list of certified minority business enterprises.

(C)(1) From the contracts to be awarded under section 123.15 and Chapter 153. of the Revised Code, the director shall select a number of contracts with an aggregate value of approximately five per cent of the total estimated value of contracts to be awarded in the current fiscal year. The director shall set aside the contracts so selected for bidding by minority business enterprises only. The bidding procedures for such contracts shall be the same as for all other contracts awarded under section 123.15 and Chapter 153. of the Revised Code except that only minority business enterprises certified and listed under division (B) of this section shall be qualified to submit bids.

(2)(a) Any contractor awarded a contract authorized by section 123.15 and Chapter 153. of the Revised Code or a contract included under division (D) of this section shall make every effort to ensure that certified minority business subcontractors and ~~materialmen~~ materials suppliers participate in the contract. In the case of contracts specified in division (A) of section 153.50 of the Revised Code, the total value of subcontracts awarded to and materials and services purchased from minority businesses shall be at least ten per cent of the total value of the contract, wherever possible and whenever the contractor awards subcontracts or purchases materials or services. In the case of all other contracts, the total value of subcontracts awarded to certified minority businesses shall equal at least five per cent of the total value of the contract. The total value of both the subcontracts

awarded to and the purchases of materials made from such businesses shall equal at least ten per cent of the total value of the contract, wherever possible and whenever the contractor awards subcontracts or purchases materials or services.

(b) Except as provided in divisions (C)(3) and (4) of this section, the department of administrative services shall not enter into any contract authorized under section 123.15 and Chapter 153. of the Revised Code, including any contract set aside under division (C)(1) of this section, unless the contract contains a provision stipulating that the contractor, to the extent that it subcontracts work, will award subcontracts totaling no less than five per cent of the total value of the contract to minority businesses certified under division (B) of this section and that the total value of both the materials purchased from minority businesses certified under division (B) of this section and of the subcontracts awarded, to the extent that it subcontracts work, to such minority businesses will equal at least seven per cent of the total value of the contract; except that in the case of contracts specified in division (A) of section 153.50 of the Revised Code, the contractor shall stipulate that the total value of both the subcontracts awarded to and the materials and services purchased from minority businesses certified under division (B) of this section will equal at least seven per cent of the total value of the contract; but for the purposes of meeting the seven per cent requirement, the value of services shall not be more than five per cent of the total value of the contract. To the extent that the contractor subcontracts work less than the percentages required to be subcontracted to minority business enterprises as established in this section, the total value of the subcontracts awarded to minority business enterprises certified under division (B) of this section need not exceed the actual amount of such subcontracts awarded.

(3) Where a contractor is unable to agree to the provision required by division (C)(2) of this section because, having made a good faith effort, the contractor is unable to locate qualified minority businesses available to accept subcontracts or sell materials or services, the contractor may apply to the coordinator and the set aside review board created under division (C)(4) of this section for a waiver or modification of the provision. The coordinator shall review the application and shall make a recommendation to the board to allow or disallow the request. After receipt of the coordinator's recommendation, the board shall review the request. If the board finds that the contractor has made a good faith effort to locate and reach agreement with minority business subcontractors and ~~materialmen~~ materials suppliers or service providers but has been unable to do so due to circumstances

beyond the reasonable control of the contractor, it may authorize the contract to include, in lieu of the provision required by division (C)(2) of this section, a provision stipulating a lesser percentage of the total value of the contract to be designated for minority business subcontractors and ~~materialmen~~ materials suppliers or it may waive such provision entirely, or stipulate a higher percentage of services permissible in contracts specified in division (A) of section 153.50 of the Revised Code. If the board does not grant the contractor's application for waiver or modification, and if the contractor is unable to agree with the provision required by division (C)(2) of this section, the contractor's bid shall be deemed nonresponsive to the specifications for which the bid was submitted. Such nonresponsiveness shall not be a basis for forfeiture of a bid guaranty or bond required by law if the contractor made application to the board for a waiver or modification within ten days following notification of award of the contract.

If a contractor requests a waiver or modification because the contractor intends to contract with an enterprise that has sought certification as a minority business enterprise in accordance with division (B)(2) of this section, but the coordinator has not rendered a decision certifying the enterprise, the board may grant the modification or waiver requested, insofar as it applies to that enterprise, if the enterprise's application for certification was filed with the coordinator at least sixty days prior to the contractor's request for waiver or modification and the contractor gives assurances satisfactory to the board that the contractor will award a contract to the enterprise seeking certification.

(4) There is hereby created in the department of administrative services the set aside review board, consisting of the director of administrative services or the director's designee, one member of the house of representatives appointed by the governor with the recommendation of the speaker of the house of representatives, and one member of the senate appointed by the governor with the recommendation of the president of the senate. Legislative members of the board shall serve four-year terms. Any legislative vacancy on the board shall be filled in the same manner as the original appointment. Members of the board shall not receive compensation but shall be reimbursed for all necessary expenses incurred in the course of their official duties.

The board shall hear all applications of contractors for waiver or modification of the contract provision required by division (C)(2) of this section and shall make a decision on each such application within thirty days of its receipt by the board.

(5) The director shall adopt rules in accordance with Chapter 119. of the

Revised Code requiring the following notice to be included in boldface type and capital letters in all bid notifications and specifications for any contract authorized under section 123.15 and Chapter 153. of the Revised Code and in any contract covered by division (D) of this section: "Minority business set-aside requirements as specified in section 123.151 of the Revised Code apply to this project. Copies of section 123.151 of the Revised Code can be obtained from any of the offices of the department of administrative services." The rules shall specify the number of days after the date on which bids are opened by which the successful bidder shall notify the contracting agency concerning the provisions the bidder has made or reasonably can be expected to make for meeting the provisions of division (C)(2) of this section.

(D)(1) To the extent that any state agency, other than the department of administrative services, and any port authority is authorized to enter into contracts for construction, the agency shall set aside a number of contracts the aggregate value of which equals approximately five per cent of the aggregate value of construction contracts for the current fiscal year for bidding by minority business enterprises only. The bidding procedures for the contracts set aside for minority business enterprises shall be the same as for all other contracts awarded by the agency or port authority, except that only minority business enterprises certified and listed under division (B) of this section shall be qualified to submit bids.

(2) All contracts for construction entered into by any state agency, other than the department of administrative services, and any port authority including contracts set aside under division (D)(1) of this section, shall contain the same provision required by division (C)(2) of this section, subject to modification or waiver by the set aside review board in the manner specified by divisions (C)(3) and (4) of this section. The rules of the director adopted under division (C)(5) of this section shall be applicable to contracts under this division.

(E) In the case of contracts set aside under division (C)(1) or (D)(1) of this section, if no bid is submitted by a minority business enterprise, the contract shall be awarded according to normal bidding procedures. The contracting agency or port authority shall from time to time set aside such additional contracts for bidding only by minority business enterprises as are necessary to replace those contracts previously set aside on which no minority business enterprises bid and to ensure that, in any fiscal year, the aggregate amount of construction contracts awarded to minority business enterprises will equal approximately five per cent of the total amount of construction contracts awarded by the agency or port authority.

(F) This section does not preclude any minority business enterprise from bidding on any other contract not specifically set aside for minority business enterprises.

(G) No funds of any state agency or port authority shall be expended in any fiscal year for construction until the director of administrative services ~~certifies~~ or the chairperson of the port authority, whichever is appropriate, certifies to the equal employment opportunity coordinator, the clerk of the senate, and the ~~legislative~~ clerk of the house of representatives that approximately five per cent of the aggregate amount of the projected expenditure for construction in the fiscal year has been set aside as provided for in this section.

(H) The department of administrative services, every other state agency authorized to enter into contracts for construction or contracts for purchases of equipment, materials, supplies, contracts of insurance, or services, and every port authority shall file a report every ninety days with the equal employment opportunity coordinator. The report shall be filed at a time and in a form prescribed by the coordinator. The report shall include the name of each minority business enterprise that the agency or port authority entered into a contract with during the preceding ninety-day period and the total value and type of each such contract. No later than thirty days after the end of each fiscal year, the coordinator shall notify in writing each state agency and port authority that has not complied with the reporting requirements of this division for the prior fiscal year. A copy of this notification regarding a state agency shall be submitted to the director of budget and management. No later than thirty days after the notification, the agency or port authority shall submit to the coordinator the information necessary to comply with the reporting requirements of this division. If, after the expiration of this thirty-day period, the agency has not complied with the reporting requirements of this division, the coordinator shall certify to the director of budget and management that the agency has not complied with the reporting requirements of this division. A copy of this certification shall be submitted to the agency. Thereafter, no funds of the state agency required to report by this division shall be expended during the fiscal year for construction or purchases of equipment, materials, supplies, contracts of insurance, or services until the coordinator certifies to the director of budget and management that the agency has complied with the reporting requirements of this division for the prior fiscal year.

If any port authority has not complied with the reporting requirement after the expiration of the thirty-day period, the coordinator shall certify to the speaker of the house of representatives and the president of the senate

that the port authority has not complied with the reporting requirements of this division. A copy of this certification shall be submitted to the port authority. Upon receipt of the certification, the speaker of the house of representatives and the president of the senate shall take such action or make such recommendations to the members of the general assembly as they consider necessary to correct the situation.

(I) Any person who intentionally misrepresents ~~himself or herself~~ self as owning, controlling, operating, or participating in a minority business enterprise for the purpose of obtaining contracts, subcontracts, or any other benefits under this section shall be guilty of theft by deception as provided for in section 2913.02 of the Revised Code.

Sec. 124.18. (A) Forty hours shall be the standard work week for all employees whose salary or wage is paid in whole or in part by the state or by any state-supported college or university. When any employee whose salary or wage is paid in whole or in part by the state or by any state-supported college or university is required by an authorized administrative authority to be in an active pay status more than forty hours in any calendar week, the employee shall be compensated for such time over forty hours, except as otherwise provided in this section, at one and one-half times the employee's regular rate of pay. The use of sick leave shall not be considered to be active pay status for the purposes of earning overtime or compensatory time by employees whose wages are paid directly by warrant of the auditor of state. A flexible-hours employee is not entitled to compensation for overtime work unless the employee's authorized administrative authority required the employee to be in active pay status for more than forty hours in a calendar week, regardless of the number of hours the employee works on any day in the same calendar week.

The authorized administrative authority shall be designated by the appointing authority to the director of administrative services. Such compensation for overtime work shall be paid no later than at the conclusion of the next succeeding pay period.

If the employee elects to take compensatory time off in lieu of overtime pay, for any overtime worked, such compensatory time shall be granted by the employee's administrative superior, on a time and one-half basis, at a time mutually convenient to the employee and the administrative superior. An employee may accrue compensatory time to a maximum of two hundred forty hours, except that public safety employees and other employees who meet the criteria established in the "Federal Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended, may accrue a maximum of four hundred eighty hours of compensatory time. An employee

shall be paid at the employee's regular rate of pay for any hours of compensatory time accrued in excess of these maximum amounts if the employee has not used the compensatory time within one hundred eighty days after it is granted, if the employee transfers to another agency of the state, or if a change in the employee's status exempts the employee from the payment of overtime compensation. Upon the termination of employment, any employee with accrued but unused compensatory time shall be paid for that time at a rate that is the greater of the employee's final regular rate of pay or the employee's average regular rate of pay during the employee's last three years of employment with the state.

No overtime, as described in this section, can be paid unless it has been authorized by the authorized administrative authority. Employees may be exempted from the payment of compensation as required by this section only under the criteria for exemption from the payment of overtime compensation established in the "Federal Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended. With the approval of the director of administrative services, the appointing authority may establish a policy to grant compensatory time or to pay compensation to state employees who are exempt from overtime compensation. With the approval of the board of county commissioners, a county human services department may establish a policy to grant compensatory time or to pay compensation to employees of the department who are exempt from overtime compensation.

(B) An employee, whose salary or wage is paid in whole or in part by the state, shall be paid for the holidays declared in section 124.19 of the Revised Code and shall not be required to work on such holidays, unless in the opinion of the employee's responsible administrative authority failure to work on such holidays would impair the public service. An employee shall not be paid for a holiday unless the employee was in active pay status on the scheduled work day immediately preceding the holiday. In the event that any of the holidays declared in section 124.19 of the Revised Code should fall on Saturday, the Friday immediately preceding shall be observed as the holiday. In the event that any of the holidays declared in section 124.19 of the Revised Code should fall on Sunday, the Monday immediately succeeding shall be observed as the holiday. If an employee's work schedule is other than Monday through Friday, the employee shall be entitled to holiday pay for holidays observed on the employee's day off regardless of the day of the week on which they are observed. A full-time permanent employee is entitled to eight hours of pay for each holiday regardless of the employee's work shift and work schedule. A flexible-hours employee is

entitled to holiday pay for the number of hours for which the employee normally would have been scheduled to work. Part-time permanent employees shall be paid holiday pay for that portion of any holiday for which they would normally have been scheduled to work. When an employee who is eligible for overtime pay under this section is required by the employee's responsible administrative authority to work on the day observed as a holiday, the employee shall be entitled to pay for such time worked at one and one-half times the employee's regular rate of pay in addition to the employee's regular pay, or to be granted compensatory time off at time and one-half thereafter, at the employee's option. Payment at such rate shall be excluded in the calculation of hours in active pay status.

(C) Each appointing authority may designate the number of employees in an agency who are flexible-hours employees. The appointing authority may establish for each flexible-hours employee a specified minimum number of hours to be worked each day that is consistent with the "Federal Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.

(D) This section shall be uniformly administered for employees as defined in section 124.01 of the Revised Code and by the personnel departments of state-supported colleges and universities for employees of state-supported colleges and universities. If employees are not paid directly by warrant of the auditor of state, the political subdivision shall determine whether the use of sick leave shall be considered to be active pay status for purposes of those employees earning overtime or compensatory time.

(E) Policies relating to the payment of overtime pay or the granting of compensatory time off shall be adopted by the ~~executive secretary~~ chief administrative officer of the house of representatives for employees of the house of representatives, by the clerk of the senate for employees of the senate, and by the director of the legislative service commission for all other legislative employees.

(F) As used in this section, "regular rate of pay" means the base rate of pay an employee receives plus any pay supplements received pursuant to section 124.181 of the Revised Code.

Sec. 125.081. (A) From the purchases that the department of administrative services is required by law to make through competitive selection, the director of administrative services shall select a number of such purchases, the aggregate value of which equals approximately fifteen per cent of the estimated total value of all such purchases to be made in the current fiscal year. The director shall set aside the purchases selected for competition only by minority business enterprises, as defined in division

(E)(1) of section 122.71 of the Revised Code. The competitive selection procedures for such purchases set aside shall be the same as for all other purchases the department is required to make through competitive selection, except that only minority business enterprises certified by the equal employment opportunity coordinator of the department of administrative services in accordance with the rules adopted under division (B)(1) of section 123.151 of the Revised Code and listed by the director under division (B) of section 125.08 of the Revised Code shall be qualified to compete.

(B) To the extent that any agency of the state, other than the department of administrative services, the legislative and judicial branches, boards of elections, and the adjutant general, is authorized to make purchases, the agency shall set aside a number of purchases, the aggregate value of which equals approximately fifteen per cent of the aggregate value of such purchases for the current fiscal year for competition by minority business enterprises only. The procedures for such purchases shall be the same as for all other such purchases made by the agency, except that only minority business enterprises certified by the equal employment opportunity coordinator in accordance with rules adopted under division (B)(1) of section 123.151 of the Revised Code shall be qualified to compete.

(C) In the case of purchases set aside under division (A) or (B) of this section, if no bid is submitted by a minority business enterprise, the purchase shall be made according to usual procedures. The contracting agency shall from time to time set aside such additional purchases for which only minority business enterprises may compete, as are necessary to replace those purchases previously set aside for which no minority business enterprises bid and to ensure that, in any fiscal year, the aggregate amount of contracts awarded to minority business enterprises will equal approximately fifteen per cent of the total amount of contracts awarded by the agency.

(D) The provisions of this section shall not preclude any minority business enterprise from competing for any other state purchases that are not specifically set aside for minority business enterprises.

(E) No funds of any state agency shall be expended in any fiscal year for any purchase for which competitive selection is required, until the director of the department of administrative services certifies to the equal employment opportunity coordinator, the clerk of the senate, and the ~~legislative~~ clerk of the house of representatives of the general assembly that approximately fifteen per cent of the aggregate amount of the projected expenditure for such purchases in the fiscal year has been set aside as provided for in this section.

(F) Any person who intentionally misrepresents ~~himself~~ self as owning, controlling, operating, or participating in a minority business enterprise for the purpose of obtaining contracts, subcontracts, or any other benefits under this section shall be guilty of theft by deception as provided for in section 2913.02 of the Revised Code.

Sec. 125.31. (A) The department of administrative services shall have supervision of all public printing except as follows:

(1) Printing for the general assembly shall be ~~under~~ the ~~supervision~~ sole responsibility of the clerk of the senate and the ~~executive secretary~~ clerk of the house of representatives unless the clerk of the senate or the clerk of the house of representatives chooses either of the options specified in section 101.523 or 101.524 Of the Revised Code.

(2) Printing for the Ohio arts council shall be under the supervision of the council.

(3) Printing for the capitol square review and advisory board shall be under the supervision of the board.

(4) Printing for the bureau of workers' compensation shall be under the supervision of the administrator of workers' compensation unless the administrator requests the department to supervise printing for the bureau.

(5) Printing for state-supported institutions of higher education shall be under the supervision of the department of purchasing of each such institution or the department or officer within each institution that performs the functions of a department of purchasing.

(B) The department of administrative services shall determine, except as otherwise specifically provided by law, the number of copies to be printed of each publication or document, the source of reproduction, the manner of binding, quality of paper, the general kind, size, and spacing of type to be used in all reports, publications, bulletins, documents, or pamphlets printed at public expense.

The department shall not use its authority to curtail the release of public information by any elected state official.

(C) For the purposes of sections 125.31 to 125.76 of the Revised Code, all functions, powers, and duties assigned to the department of administrative services are considered to be assigned to the division of state printing within the department of administrative services.

Sec. 125.42. (A) No officer, board, or commission, except the clerk of the senate and the ~~executive secretary~~ clerk of the house of representatives ~~as to first and second class printing~~, shall print or cause to be printed at the public expense, any report, bulletin, document, or pamphlet, unless such report, bulletin, document, or pamphlet is first submitted to, and the printing

thereof approved by, the department of administrative services. If such department approves the printing, it shall determine the form of such printing and the number of copies.

If such approval is given, the department shall cause the same to be printed and bound as provided by sections 125.47 to 125.56 of the Revised Code, except as otherwise provided by section 125.45 of the Revised Code; and when printed, such publications or forms shall be delivered to the ordering officer, board, commission, or department, or sold at a price not to exceed the total cost.

(B) The department of administrative services annually shall set a maximum cost per page and a maximum total cost for the printing by any board, commission, council, or other public body of the state of any annual report or any other report that it is required by law to produce. No board, commission, council, or other public body of the state shall expend or incur the expenditure of any amount in excess of these maximum amounts without the prior approval of the department. This division does not apply to the general assembly or any court.

Sec. 125.47. The printing for the state shall be divided into four classes and, except as otherwise provided in this section, each class shall be let in separate contracts as follows:

(A) First Class. Bills for the two houses of the general assembly, resolutions and other matters ordered by either of them to be printed in bill form, general and local laws, joint resolutions;

(B) Second Class. The journals and bulletins of the senate and house of representatives, and reports, communications, and other documents which form part of the journals;

(C) Third class. Reports, communications, and other documents ordered by the general assembly, or either house thereof, or by the executive department or elective state officers to be printed in pamphlet form or required to be bound, not including the laws, joint resolutions, and journals of the senate and house of representatives;

(D) Fourth class. Blanks, circulars, and other work for the use of the executive departments, and elective state officers, not including those to be printed in pamphlet form or required to be bound.

The printing for the third and fourth classes may be let in one or more contracts, as the director of administrative services requires.

The director of administrative services may let a contract for printing of the first or second class, or for printing of the third class insofar as it involves reports, communications, or other documents ordered by the general assembly or either house thereof, only if, and then only to the extent

<u>that, either (1) the director and the clerk of the senate or the clerk of the house of representatives have agreed upon terms for the clerk's participation in the public printing services provided by the department of administrative services or (2) the clerk of the senate or clerk of the house of representatives has requested the director of administrative services to let a contract for printing.</u>

Sec. 125.48. Biennially, between the first day of June and the first day of August, the department of administrative services shall give notice pursuant to sections 125.07 and 125.08 of the Revised Code that sealed proposals will be received at its office for executing the several classes of public printing, including the necessary binding<u>,</u> for ~~the term of two years from the first Monday of October next ensuing for classes one and two printing, and~~ terms not to exceed two years for classes three and four.

~~bureau employment services~~

Sec. 125.58. The department of administrative services shall promptly notify each successful bidder of the acceptance of ~~his~~ <u>the bidder's</u> proposal for state printing. If such bidder fails to execute ~~his~~ <u>the</u> contract because of death or other cause, or if ~~he~~ <u>the bidder</u> fails to execute the work required by ~~his~~ <u>the</u> contract in a proper manner and with reasonable promptness, or ~~his~~ <u>the</u> contract is abandoned, or its execution is temporarily suspended, the department may enter into a contract with another person for the prompt execution of the work for the lowest price which may be obtained. Before any work is relet in consequence of the misconduct or default of the contractor, the department shall give ~~him~~ <u>the contractor</u> written notice thereof. The department of administrative services ~~or the clerk of the senate or the executive secretary of the house of representatives~~ may set a daily penalty charge for late orders, provided the penalty schedule and amount are stated in the invitation to bid for ~~said~~ <u>the</u> printing.

Sec. 125.76. All printing and binding for the state, not authorized by sections 125.43 to 125.71 or section 3345.10 of the Revised Code, except <u>for</u> maps <u>and printing that is the sole responsibility of the clerk of the senate or the clerk of the house of representatives</u>, shall be subject to such sections so far as practical, and whether provided for by law or resolution of the general assembly the department of administrative services shall advertise for proposals and let contracts therefor as provided in such sections.

Sec. 127.16. (A) Upon the request of either a state agency or the director of budget and management and after the controlling board determines that an emergency or a sufficient economic reason exists, the controlling board may approve the making of a purchase without competitive selection as provided in division (B) of this section.

(B) Except as otherwise provided in this section, no state agency, using money that has been appropriated to it directly, shall:

(1) Make any purchase from a particular supplier, that would amount to fifty thousand dollars or more when combined with both the amount of all disbursements to the supplier during the fiscal year for purchases made by the agency and the amount of all outstanding encumbrances for purchases made by the agency from the supplier, unless the purchase is made by competitive selection or with the approval of the controlling board;

(2) Lease real estate from a particular supplier, if the lease would amount to seventy-five thousand dollars or more when combined with both the amount of all disbursements to the supplier during the fiscal year for real estate leases made by the agency and the amount of all outstanding encumbrances for real estate leases made by the agency from the supplier, unless the lease is made by competitive selection or with the approval of the controlling board.

(C) Any person who authorizes a purchase in violation of division (B) of this section shall be liable to the state for any state funds spent on the purchase, and the attorney general shall collect the amount from the person.

(D) Nothing in division (B) of this section shall be construed as:

(1) A limitation upon the authority of the director of transportation as granted in sections 5501.17, 5517.02, and 5525.14 of the Revised Code;

(2) Applying to medicaid provider agreements under Chapter 5111. of the Revised Code or payments or provider agreements under disability assistance medical assistance established under Chapter 5115. of the Revised Code;

(3) Applying to the purchase of examinations from a sole supplier by a state licensing board under Title XLVII of the Revised Code;

(4) Applying to entertainment contracts for the Ohio state fair entered into by the Ohio expositions commission, provided that the controlling board has given its approval to the commission to enter into such contracts and has approved a total budget amount for such contracts as agreed upon by commission action, and that the commission causes to be kept itemized records of the amounts of money spent under each contract and annually files those records with the ~~legislative~~ clerk of the house of representatives and the clerk of the senate following the close of the fair;

(5) Limiting the authority of the chief of the division of mines and reclamation to contract for reclamation work with an operator mining adjacent land as provided in section 1513.27 of the Revised Code;

(6) Applying to investment transactions and procedures of any state agency, except that the agency shall file with the board the name of any

person with whom the agency contracts to make, broker, service, or otherwise manage its investments, as well as the commission, rate, or schedule of charges of such person with respect to any investment transactions to be undertaken on behalf of the agency. The filing shall be in a form and at such times as the board considers appropriate.

(7) Applying to purchases made with money for the per cent for arts program established by section 3379.10 of the Revised Code;

(8) Applying to purchases made by the rehabilitation services commission of services, or supplies, that are provided to persons with disabilities, or to purchases made by the commission in connection with the eligibility determinations it makes for applicants of programs administered by the social security administration;

(9) Applying to payments by the department of human services under section 5111.13 of the Revised Code for group health plan premiums, deductibles, coinsurance, and other cost-sharing expenses;

(10) Applying to any agency of the legislative branch of the state government;

(11) Applying to agreements entered into under section 5101.11, 5101.21, or 5101.211 of the Revised Code;

(12) Applying to purchases of services by the adult parole authority under section 2967.14 of the Revised Code or by the department of youth services under section 5139.08 of the Revised Code;

(13) Applying to dues or fees paid for membership in an organization or association;

(14) Applying to purchases of utility services pursuant to section 9.30 of the Revised Code;

(15) Applying to purchases made in accordance with rules adopted by the department of administrative services of motor vehicle, aviation, or watercraft fuel, or emergency repairs of such vehicles;

(16) Applying to purchases of tickets for passenger air transportation;

(17) Applying to purchases necessary to provide public notifications required by law or to provide notifications of job openings;

(18) Applying to the judicial branch of state government;

(19) Applying to purchases of liquor for resale by the department or, on and after July 1, 1997, the division of liquor control;

(20) Applying to purchases of motor courier and freight services made in accordance with department of administrative services rules;

(21) Applying to purchases from the United States postal service and purchases of stamps and postal meter replenishment from vendors at rates established by the United States postal service;

(22) Applying to purchases of books, periodicals, pamphlets, newspapers, maintenance subscriptions, and other published materials;

(23) Applying to purchases from other state agencies, including state-assisted institutions of higher education;

(24) Limiting the authority of the director of environmental protection to enter into contracts under division (D) of section 3745.14 of the Revised Code to conduct compliance reviews, as defined in division (A) of that section;

(25) Applying to purchases from a qualified nonprofit agency pursuant to sections 4115.31 to 4115.35 of the Revised Code;

(26) Applying to payments by the department of human services to the United States department of health and human services for printing and mailing notices pertaining to the tax refund offset program of the internal revenue service of the United States department of the treasury;

(27) Applying to contracts entered into by the department of mental retardation and developmental disabilities under sections 5123.18, 5123.182, and 5111.252 of the Revised Code;

(28) Applying to payments made by the department of mental health under a physician recruitment program authorized by section 5119.101 of the Revised Code;

(29) Applying to contracts entered into with persons by the director of commerce for unclaimed funds collection and remittance efforts as provided in division (F) of section 169.03 of the Revised Code. The director shall keep an itemized accounting of unclaimed funds collected by those persons and amounts paid to them for their services.

(E) Notwithstanding division (B)(1) of this section, the cumulative purchase threshold shall be seventy-five thousand dollars for the departments of mental retardation and developmental disabilities, mental health, rehabilitation and correction, and youth services.

(F) When determining whether a state agency has reached the cumulative purchase thresholds established in divisions (B)(1), (B)(2), and (E) of this section, all of the following purchases by such agency shall not be considered:

(1) Purchases made through competitive selection or with controlling board approval;

(2) Purchases listed in division (D) of this section;

(3) For the purposes of the thresholds of divisions (B)(1) and (E) of this section only, leases of real estate.

(G) As used in this section, "competitive selection," "purchase," "supplies," and "services" have the same meanings as in section 125.01 of

the Revised Code.

Sec. 129.52. An amount of money in the improvements bond retirement fund created by Section 2f of Article VIII, Ohio Constitution, sufficient to pay all interest, principal, and charges for the issuance and retirement of bonds or other obligations issued pursuant to Section 2f of Article VIII, Ohio Constitution, and section 129.50 of the Revised Code, due and payable during that calendar year, is hereby pledged and appropriated for that purpose.

Whenever on the first day of any calendar quarter or if on receipt of the proceeds of the sale of bonds or other obligations to be used to retire outstanding bonds or other obligations, there are sufficient moneys to the credit of the improvements bond retirement fund created by Section 2f of Article VIII, Ohio Constitution, to meet in full all requirements of interest, principal, and charges for the issuance and retirement of bonds or other obligations issued pursuant to Section 2f of Article VIII, Ohio Constitution, and section 129.50 of the Revised Code, due and payable during the then current calendar year and to provide the necessary accruals during such year for such requirements for the next succeeding calendar year, the commissioners of the sinking fund shall make a certification of such fact to the clerk of the senate, the ~~executive secretary~~ chief administrative officer of the house of representatives, and the treasurer of state, together with the amount of moneys in such bond retirement fund in excess of such requirements and accruals thereon to be paid from that fund. The treasurer of state shall transfer and expend moneys in excess of the amount so required to be retained in the improvements bond retirement fund created by Section 2f of Article VIII, Ohio Constitution, at such times and as may be provided by law.

Sec. 129.56. Upon the payment in full of all interest, principal, and charges for the issuance and retirement of all bonds and other obligations issued pursuant to Section 2f of Article VIII, Ohio Constitution, and section 129.50 of the Revised Code, the commissioners of the sinking fund shall make a certification of such fact to the clerk of the senate, the ~~executive secretary~~ chief administrative officer of the house of representatives, and the treasurer of state.

Sec. 129.64. Upon the payment in full of all interest, principal, and charges for the issuance and retirement of all bonds and notes issued pursuant to Section 2h of Article VIII, Ohio Constitution, and section 129.60 of the Revised Code, the commissioners of the sinking fund shall make a certification of such fact to the clerk of the senate, the ~~executive secretary~~ chief administrative officer of the house of representatives, and the

treasurer of state.

Sec. 149.07. One bound copy of each of the final journals and appendixes~~,~~ and fifty copies of maps of Ohio showing congressional, senatorial, and judicial districts of the state shall be sent to each member of the general assembly.

Sec. 149.09. The secretary of state shall distribute the pamphlet laws ~~printed in accordance with section 101.52 of the Revised Code~~ in the following manner: one copy of each pamphlet law shall be forwarded to each county law library, one copy of each pamphlet law shall be forwarded to each county auditor, and one hundred copies of each pamphlet law shall be forwarded to the state library board, which shall forward to each library that receives publications under section 149.12 of the Revised Code one copy of each pamphlet law received. Any remaining copies of each pamphlet law received by the secretary of state shall be distributed by the secretary of state on the request of interested persons.

Sec. 149.091. The secretary of state shall publish and distribute a maximum of nine hundred copies of the session laws in permanently bound form, either annually or biennially. The permanently bound volumes shall contain copies of all enrolled acts and joint resolutions, and shall contain a subject index and a table indicating Revised Code sections affected. The secretary of state shall cause to be printed in each volume ~~his~~ the secretary of state's certificate that the laws, as assembled therein, are true copies of the original enrolled bills in ~~his~~ the secretary of state's office.

The secretary of state shall distribute the permanently bound volumes of the session laws in the following manner:

(A) One hundred nine copies shall be forwarded to the ~~legislative~~ clerk of the house of representatives.

(B) Forty-three copies shall be forwarded to the clerk of the senate.

(C) One copy shall be forwarded to each county auditor.

(D) One copy shall be forwarded to each county law library.

(E) Seventy-five copies shall be forwarded to the Ohio supreme court.

(F) Two copies shall be forwarded to the division of the library of congress.

(G) Two copies shall be forwarded to the state library.

(H) Two copies shall be forwarded to the Ohio historical society.

(I) Thirteen copies shall be forwarded to the legislative service commission.

(J) Two hundred copies may be distributed, free of charge, to public officials.

(K) Remaining copies may be sold by the secretary of state at a price to

Case: 2:26-cv-01025-EAS-KAJ Doc #: 21-15 Filed: 09/25/26 Page: 31 of 50 PAGEID #: 318



be determined by the department of administrative services, but such selling price shall not exceed by ten per cent the cost of publication and distribution.

Sec. 149.13. (A) The general assembly or any agency or committee thereof and each department, division, bureau, board, commission, or other agency of the state government, whenever it prints or reproduces a report, pamphlet, or other publication, including reports generated through electronic data processing, whether prepared on contract or by the general assembly or the department, division, bureau, board, commission, or other agency, shall, except where the report, pamphlet, or other publication is reproduced by equipment normally used by it at its offices, cause to be placed on the first page, or the front, back<u>,</u> or inside cover, the number of copies produced and the cost per copy of the report, pamphlet, or other publication based on the expenses calculated under section 125.49 of the Revised Code.

(B) This section does not apply to:

(1) Bills, acts, ~~or~~ legislative journals<u>, or educational materials</u> published by the general assembly or to any fiscal, substantive, or technical analysis or explanation of particular bills before the general assembly;

(2) Any regularly produced daily or weekly summary or listings of bills or acts of the general assembly;

(3) Press releases;

(4) Official forms, or instructions on how to fill out the forms;

(5) Any publication or report of less than twenty-five copies generated through electronic data processing.

Sec. 149.17. Highway maps shall be published by the state and shall be officially designated as "Highway Maps of Ohio." The director of transportation may designate the improved roads by color, and revise such maps from time to time as the improvement of the roads may justify.

The director shall secure a copyright of the ~~said~~ maps from time to time when so published. The director may distribute the first edition of these maps, which has been published as a bulletin of the department of transportation, as follows: to each county commissioner, county auditor, and county engineer, one copy; to the director for distribution among those who gratuitously helped in preparing maps, one hundred fifty copies; for distribution among the several state departments, three hundred copies; to the state library, one hundred copies; to each newspaper correspondent of the general assembly, one copy; to the clerk of the senate and <u>to</u> the ~~legislative~~ clerk and ~~executive secretary~~ <u>the chief administrative officer</u> of the house of representatives, one copy each; to each sergeant at arms~~,~~ of the

senate and of the house of representatives, one copy; the remaining copies to be equally divided among the members of the general assembly.

Sec. 164.11. (A) The issuer shall, on or before the fifteenth day of January of each calendar year, certify to the office of budget and management the total amount of moneys required during that calendar year to meet in full all payments of bond service charges and financing costs due and payable in that calendar year on outstanding obligations, the principal amount of notes and any financing costs which are to be paid from the proceeds of the bonds anticipated or of renewal notes issued pursuant to section 164.09 of the Revised Code, and the balance required to be otherwise provided.

(B) When the moneys to the credit of the bond service fund are sufficient to provide for payment of the balance required as stated in the certificate provided for in division (A) of this section, the issuer shall certify such fact to the office of budget and management.

(C) If and so long as the moneys to the credit of the bond service fund are insufficient to meet in full all payments of the balance required as stated in the certificate provided for in division (A) of this section, the issuer shall at such times as provided in the bond proceedings, and in any event within ten days prior to the date any such payments are due, certify to the office of budget and management the total amount of such bond service charges, the amount of moneys to the credit of the bond service fund, and the amount of additional money necessary to be credited to the bond service fund to meet in full the payment of such bond service charges when due.

(D) If upon the certification provided for in division (A) or (C) of this section, or if on presentation of obligations for payment of bond service charges when due, there are insufficient moneys in the bond service fund for payment of bond service charges and costs of credit facilities as so certified, the issuer shall, upon consultation with the director of budget and management, transfer a sufficient amount to the bond service fund from the undistributed receipts derived from all fees, taxes, excises, and other receipts of the state, except fees, excises, or taxes relating to the registration, operation, or use of vehicles on the public highways, or to fuels used for propelling such vehicles, which excises and taxes, other than those excepted, are and shall be deemed to be levied, in addition to the purposes otherwise provided for by law, to provide in accordance with sections 164.09 to 164.12 of the Revised Code and the bond proceedings for the payment of bond service charges and costs of credit facilities. The levy and collection of such excises and taxes and their application to the payment of the bond service charges and costs relating to credit facilities, as provided by this

section, shall continue and is hereby covenanted with the holders of such obligations and providers of credit facilities to be continued so long as such obligations are outstanding.

(E) The general assembly may from time to time repeal or reduce any fee, excise, or tax pledged pursuant to Section 2k or 2m of Article VIII, Ohio Constitution, to the payment of the bond service charges, and may levy any new or increased fee, excise, or tax to meet the pledge to the payment of bond service charges on outstanding obligations of the state's full faith and credit, revenues, and taxing power, except fees, excises, or taxes relating to the registration, operation, or use of vehicles on the public highways, or to fuels used for propelling such vehicles. Nothing in this division authorizes any impairment of the obligation of this state to levy and collect sufficient fees, excises, and taxes to pay bond service charges on obligations outstanding in accordance with their terms.

(F) Upon the payment or provision for payment in full of all bond service charges on all obligations in accordance with their terms, the issuer shall certify such fact to the clerk of the senate, the ~~legislative~~ clerk of the house of representatives, the office of budget and management, and the commissioners of the sinking fund. Upon making such certification the issuer shall transfer all moneys then remaining to the credit of the bond service fund, and not needed for the purpose of paying bond service charges, to the general revenue fund.

Sec. 1555.14. Upon the payment in full of all interest, principal, and charges for the retirement of all obligations issued pursuant to Section 15 of Article VIII, Ohio Constitution, and section 1555.08 of the Revised Code, the commissioners of the sinking fund shall make a certification of such fact to the clerk of the senate, the ~~legislative~~ clerk of the house of representatives, and the treasurer of state.

Upon receipt of such certification the treasurer of state shall transfer all moneys then remaining to the credit of the coal research and development bond service fund to the general revenue fund.

Sec. 2331.11. ~~The~~ (A) The following persons are privileged from arrest:

~~(A)~~(1) Members, the ~~executive secretary~~ chief administrative officer of the house of representatives, the ~~legislative~~ clerk of the house of representatives, clerks, sergeants at arms, ~~doorkeepers,~~ and ~~messengers~~ staff of the senate and house of representatives, during the sessions of the general assembly, and while traveling to and from such sessions~~, allowing one day for every twenty-five miles of the distance, by the route most usually traveled; whoever arrests such a person in violation of this division shall pay one hundred dollars, to be recovered by civil action, in the name and for the~~

Case: 2:26-cv-01025-EAS-KAJ Doc #: 21-15 Filed: 09/25/26 Page: 34 of 50 PAGEID #: 321



~~use of the person injured~~;

~~(B)~~(2) Electors, while going to, returning from, or in attendance at elections;

~~(C)~~(3) Judges of the courts, while attending court, and also during the time necessarily employed in going to, holding, and returning from the court ~~which~~ that it is their duty to attend;

~~(D)~~(4) Attorneys, bailiffs, clerks of courts, sheriffs, coroners, constables, ~~criers, suitors~~ plaintiffs, defendants, jurors, and witnesses, and other officers or employees of the court, while going to, attending, or returning from court;

~~(E) Israelites and such other persons as religiously observe the last or any other day of the week as a~~ (5) Persons who, on their traditional day of worship, ~~on such day,~~ are within, going to, or returning from their ~~places~~ place of worship, ~~or during the time of~~ are worshipping at a service, ~~and while~~ or are going to or returning ~~therefrom;~~

~~(F) A person doing militia duty under the order of such person's commanding officer or while going to or returning from the place of duty or parade~~ from a service.

(B) Whoever arrests a person in violation of division (A) of this section shall pay one hundred dollars, to be recovered by civil action, in the name and for the use of the person injured.

Sec. 3317.09. All moneys distributed to a school district, including any cooperative education or joint vocational school district and all moneys distributed to any educational service center, by the state whether from a state or federal source, shall be accounted for by the division of school finance of the department of education. All moneys distributed shall be coded as to county, school district or educational service center, source, and other pertinent information, and at the end of each month, a report of such distribution shall be made by such division of school finance to the clerk of the senate and the ~~executive secretary~~ chief administrative officer of the house of representatives, to the Ohio legislative service commission to be available for examination by any member of either house, to each school district and educational service center, and to the governor.

On or before the first day of September in each year, a copy of the annual statistical report required in sections 3319.33 and 3319.34 of the Revised Code shall be filed by the state board of education with the clerk of the senate and the ~~executive secretary~~ chief administrative officer of the house of representatives, the Ohio legislative service commission, the governor, and the auditor of state. The report shall contain an analysis for the prior fiscal year on an accrual basis of revenue receipts from all sources

and expenditures for all purposes for each school district and each educational service center, including each joint vocational and cooperative education school district, in the state. If any board of education or any educational service center governing board fails to make the report required in sections 3319.33 and 3319.34 of the Revised Code, the superintendent of public instruction shall be without authority to distribute funds to that school district or educational service center pursuant to sections 3317.022 to 3317.0212, 3317.11, 3317.16, 3317.17, or 3317.19 of the Revised Code until such time as the required reports are filed with all specified officers, boards, or agencies.

Sec. 4121.03. (A) The governor shall appoint from among the members of the industrial commission the chairperson of the industrial commission. The chairperson shall serve as chairperson at the pleasure of the governor. The chairperson is the head of the commission and its chief executive officer.

(B) The chairperson shall appoint, after consultation with other commission members and obtaining the approval of at least one other commission member, an executive director of the commission. The executive director shall serve at the pleasure of the chairperson. The executive director, under the direction of the chairperson, shall perform all of the following duties:

(1) Act as chief administrative officer for the commission;

(2) Ensure that all commission personnel follow the rules of the commission;

(3) Ensure that all orders, awards, and determinations are properly heard and signed, prior to attesting to the documents;

(4) Coordinate, to the fullest extent possible, commission activities with the bureau of workers' compensation activities;

(5) Do all things necessary for the efficient and effective implementation of the duties of the commission.

The responsibilities assigned to the executive director of the commission do not relieve the chairperson from final responsibility for the proper performance of the acts specified in this division.

(C) The chairperson shall do all of the following:

(1) Except as otherwise provided in this division, employ, promote, supervise, remove, and establish the compensation of all employees as needed in connection with the performance of the commission's duties under this chapter and Chapters 4123., 4127., and 4131. of the Revised Code and may assign to them their duties to the extent necessary to achieve the most efficient performance of its functions, and to that end may establish, change,

or abolish positions, and assign and reassign duties and responsibilities of every employee of the commission. The civil service status of any person employed by the commission prior to November 3, 1989, is not affected by this section. Personnel employed by the bureau or the commission who are subject to Chapter 4117. of the Revised Code shall retain all of their rights and benefits conferred pursuant to that chapter as it presently exists or is hereafter amended and nothing in this chapter or Chapter 4123. of the Revised Code shall be construed as eliminating or interfering with Chapter 4117. of the Revised Code or the rights and benefits conferred under that chapter to public employees or to any bargaining unit.

(2) Hire district and staff hearing officers after consultation with other commission members and obtaining the approval of at least one other commission member;

(3) Fire staff and district hearing officers when the chairperson finds appropriate after obtaining the approval of at least one other commission member;

(4) Maintain the office for the commission in Columbus;

(5) To the maximum extent possible, use electronic data processing equipment for the issuance of orders immediately following a hearing, scheduling of hearings and medical examinations, tracking of claims, retrieval of information, and any other matter within the commission's jurisdiction, and shall provide and input information into the electronic data processing equipment as necessary to effect the success of the claims tracking system established pursuant to division (B)(15) of section 4121.121 of the Revised Code;

(6) Exercise all administrative and nonadjudicatory powers and duties conferred upon the commission by Chapters 4121., 4123., 4127., and 4131. of the Revised Code;

(7) Approve all contracts for special services.

(D) The chairperson is responsible for all administrative matters and may secure for the commission facilities, equipment, and supplies necessary to house the commission, any employees, and files and records under the commission's control and to discharge any duty imposed upon the commission by law, the expense thereof to be audited and paid in the same manner as other state expenses. For that purpose, the chairperson, separately from the budget prepared by the administrator of workers' compensation, shall prepare and submit to the office of budget and management a budget for each biennium according to sections ~~101.55~~ <u>101.532</u> and 107.03 of the Revised Code. The budget submitted shall cover the costs of the commission and staff and district hearing officers in the discharge of any

duty imposed upon the chairperson, the commission, and hearing officers by law.

(E) A majority of the commission constitutes a quorum to transact business. No vacancy impairs the rights of the remaining members to exercise all of the powers of the commission, so long as a majority remains. Any investigation, inquiry, or hearing that the commission may hold or undertake may be held or undertaken by or before any one member of the commission, or before one of the deputies of the commission, except as otherwise provided in this chapter and Chapters 4123., 4127., and 4131. of the Revised Code. Every order made by a member, or by a deputy, when approved and confirmed by a majority of the members, and so shown on its record of proceedings, is the order of the commission. The commission may hold sessions at any place within the state. The commission is responsible for all of the following:

(1) Establishing the overall adjudicatory policy and management of the commission under this chapter and Chapters 4123., 4127., and 4131. of the Revised Code, except for those administrative matters within the jurisdiction of the chairperson, bureau of workers' compensation, and the administrator of workers' compensation under those chapters;

(2) Hearing appeals and reconsiderations under this chapter and chapters 4123., 4127., and 4131. of the Revised Code;

(3) Engaging in rulemaking where required by this chapter or Chapter 4123., 4127., or 4131. of the Revised Code.

Sec. 5117.12. (A) On or before the thirty-first day of August of each year, each energy company shall file a written report with the tax commissioner regarding the impact, if any, of the requirements of division (E) of section 5117.11 of the Revised Code on the number of uncollectible and past due residential accounts for the twelve-month period ending on the preceding thirty-first day of July. The report shall include such information as is prescribed by the tax commissioner. The information shall be based on actual reviews of residential customer accounts and shall be presented in verifiable form. The tax commissioner may consult with the public utilities commission and the consumers' counsel in prescribing the contents of such reports and complying with the requirements of division (C)(4) of this section.

(B) Before the thirty-first day of January of each year, the tax commissioner shall prepare a written report including a final review of the Ohio energy credit program for which applications were required to be mailed or provided by the fifteenth day of June of the second preceding calendar year pursuant to section 5117.03 of the Revised Code and an

interim review of the program for which applications were required to be mailed or provided by the fifteenth day of June of the preceding calendar year under such section. On or before the thirty-first day of January of each year, the commissioner shall provide written copies of such report to the speaker of the house of representatives, president of the senate, minority leaders of the house of representatives and senate, chairpersons of the house ~~finance-appropriations~~ finance and appropriations committee and senate finance committee, chairpersons of the committees of the house of representatives and senate customarily entrusted with matters concerning public utilities, ~~legislative~~ clerk of the house of representatives, and clerk of the senate.

(C) Each report prepared under division (B) of this section shall include a review of:

(1) Program costs;

(2) The number of persons receiving credits or payments under the program;

(3) Progress in the implementation of any changes in the program made by the general assembly within the period covered by the report;

(4) The impact, if any, of the requirements of division (E) of section 5117.11 of the Revised Code on the number of uncollectible and past due residential accounts of energy companies for the twelve-month period ending on the preceding thirty-first day of July;

(5) The impact of any federal energy assistance programs available to the same groups of people as are eligible for the energy credit program under sections 5117.01 to 5117.12 of the Revised Code, together with any recommendations on modifications that may, because of the federal programs, be needed in the energy credit program;

(6) Any suggestions for improving the program;

(7) Any other matters considered appropriate by the commissioner.

(D) The tax commissioner shall consult with the auditor of state, energy companies, energy dealers, department of aging, and commission on Hispanic-Latino affairs in the preparation of any report under this section. The commissioner may require information from such agencies for the purpose of preparing such report.

Sec. 5119.39. (A) The director of mental health may enter into agreements with any person, political subdivision, or state agency for the sale or lease of land or facilities under the jurisdiction of the director in the following manner:

(1) The director shall designate lands and facilities that are not needed by the department and are under the jurisdiction of the department.

(2) The director shall have a preliminary appraisal made of any lands or facilities designated under division (A) of this section by a disinterested professional appraiser from the department of administrative services. The appraiser shall deliver to the director a signed certificate of the probable market value of the lands and facilities as determined from the preliminary appraisal.

(3) The director shall certify to the ~~legislative~~ clerk of the house of representatives and to the clerk of the senate a list of all lands and facilities which may be sold or leased, and shall include with the list the results of the preliminary appraisals of the lands and facilities, a general description of the land and facilities, and a description of the current use of the land and facilities.

(4) Every list of lands and facilities certified by the director to the ~~legislative~~ clerk of the house of representatives and to the clerk of the senate under division (A)(3) of this section, shall immediately be transmitted by the respective clerks to the committees in the house and the senate to which land conveyance bills are usually referred. If either committee files in its clerk's office, within sixty calendar days of the original certification of the lands and facilities by the director, a report disapproving the sale or lease of any lands or facilities, the sale or lease of the lands or facilities disapproved in the report shall not be made under this section. With respect to a sale or lease of lands and facilities that has not been disapproved under this division, the director shall certify those lands and facilities to the auditor of state.

(5) After certification to the auditor of state under division (A)(4) of this section, the director of mental health shall have a formal appraisal made of the lands and facilities by a disinterested professional appraiser from the department of administrative services. The director may accept the formal appraisal or ~~he~~ may reject it and order a new formal appraisal by a disinterested professional appraiser who shall not be from the department of administrative services. The director may then sell or lease the lands or facilities in accordance with this division and department of administrative services procedures as set forth in Chapter 123. of the Revised Code. Any such deed or lease shall be prepared and recorded pursuant to section 5301.13 of the Revised Code. The department of administrative services shall be the sole agent for the state and shall complete the sale or lease of the lands or facilities, up to and including the closing thereof, after the director approves the sale price. The director and the director of administrative services may, if it is determined to be in the best interests of the state, agree to sell surplus land for an amount less than the formal appraised value but

shall not sell any land for less than two-thirds of the formal appraised value.

(B) Coincident with ~~his~~ the certification made under division (A)(3) of this section concerning lands which may be sold, the director shall give written notice of ~~his~~ the director's intention to sell the lands by certified mail to the executive officer of each county, township, municipal corporation, and school district within which the lands are situated. In each notice, the director shall specify the conditions under which the lands shall be sold, including whether the lands will be sold as a single unit or sold in specific parcels that ~~he~~ the director designates, and shall solicit from the subdivision offers to purchase the lands in accordance with the conditions ~~he~~ the director has specified and at a price equal to the preliminary appraised value determined pursuant to division (A)(2) of this section. If, within thirty days of having certified the lands to the auditor of state under division (A)(4) of this section, the director receives from the executive officer of a subdivision a written offer to purchase the lands at or above the price specified in ~~his~~ the director's original notice to the officer, provided such offer otherwise complies with the conditions of purchase specified in ~~his~~ the director's original notice, the director shall forthwith enter into an agreement to sell the lands to the subdivision. The agreement shall incorporate any and all terms that are acceptable to both parties and that are consistent with the terms specified in the director's original notice. If no offer to purchase is received by the director within the thirty-day period provided in this division, the director's original notice shall be considered withdrawn and ~~he~~ the director shall be under no obligation to sell any of the lands specified in the notice to the subdivision. If two or more offers to purchase the same parcels of land are received by the director within the required time period from the executive officers of two or more subdivisions, the director shall accept the offer or offers to purchase that ~~he~~ the director considers to be in the best interests of the state and of the department of mental health and shall proceed to enter into agreements of sale pursuant to this division. If all of the director's original notices relating to a given parcel of land become withdrawn, ~~he~~ the director may thereupon proceed to sell the parcel as otherwise provided in this section. No subdivision may commence an action to enforce the provisions of this division, or to seek any other legal or equitable remedy relative to this division, with respect to any lands certified to the auditor of state under division (A)(4) of this section, except within sixty days of the date on which the lands were so certified.

(C) Any agreement under this section shall be at such terms as will be in the best interests of the state and the department of mental health. However, the terms of any agreement for sale shall include a provision that the

haser will abide by any comprehensive plan for the area that has been adopted by the local government in which the property is located before the parties enter into the agreement. No lease shall be of a duration greater than fifteen years. No agreement, except an agreement entered into under division (B) of this section, shall be entered into before the proposal to sell or lease the land or facilities has been advertised once each week for four weeks in a newspaper of general circulation in every county in which the lands or facilities are located and if the preliminary appraised value of the land to be sold or leased is more than one hundred thousand dollars, advertisement shall be made once each week for four weeks in at least two newspapers in the state having a daily circulation of one hundred thousand or more. If a city in this state is served by more than one newspaper having a circulation of one hundred thousand or more, advertisement may be made in only one of the newspapers serving the city.

(D) Each deed or lease prepared and recorded pursuant to this section shall contain a recital stating that all provisions of this section have been complied with. The recital shall be considered binding and conclusive against all subdivisions of the state provided no action has been commenced pursuant to division (B) of this section. Any deed or lease containing such a recital shall be conclusively presumed to have been executed in compliance with this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned.

(E) Nothing in this section shall be construed as establishing a precedent for the disposal of state lands and facilities by other departments of the state.

Sec. 5123.231. (A) Until June 30, 1981, or until the department of mental retardation and developmental disabilities has achieved substantial compliance with the standards for the physical facilities and equipment of institutions under its jurisdiction as required by section 5123.16 of the Revised Code, the director of the department may enter into agreements with any person, political subdivision, or state agency for the sale or lease of land or facilities under the jurisdiction of the director in the following manner:

(1) The director shall designate lands and facilities that are not needed by the department and are under the jurisdiction of the department.

(2) The director shall have a preliminary appraisal made of any lands or facilities designated under division (A) of this section by a disinterested professional appraiser from the department of administrative services. The appraiser shall deliver to the director a signed certificate of the probable market value of the lands and facilities as determined from the preliminary appraisal.

(3) The director shall certify to the ~~legislative~~ clerk of the house of representatives and to the clerk of the senate a list of all lands and facilities which may be sold or leased, and shall include with the list the results of the preliminary appraisals of the lands and facilities, a general description of the land and facilities, and a description of the current use of the land and facilities.

(4) Every list of lands and facilities certified by the director to the ~~legislative~~ clerk of the house of representatives and to the clerk of the senate under division (A)(3) of this section, shall immediately be transmitted by the respective clerks to the committees in the house and the senate to which land conveyance bills are usually referred. If either committee files in its clerk's office, within sixty calendar days of the original certification of the lands and facilities by the director, a report disapproving the sale or lease of any lands or facilities, the sale or lease of the lands or facilities disapproved in the report shall not be made under this section. With respect to a sale or lease of lands and facilities that has not been disapproved under this division, the director shall certify those lands and facilities to the auditor of state.

(5) After certification to the auditor of state under division (A)(4) of this section, the director shall have a formal appraisal made of the lands and facilities by a disinterested professional appraiser from the department of administrative services. The director may accept the formal appraisal or ~~he~~ the director may reject it and order a new formal appraisal by a disinterested professional appraiser who shall not be from the department of administrative services. The director may then sell or lease the lands or facilities in accordance with this division and department of administrative services procedures as set forth in Chapter 123. of the Revised Code. Any such deed or lease shall be prepared and recorded pursuant to section 5301.13 of the Revised Code. The department of administrative services shall be the sole agent for the state and shall complete the sale or lease of the lands or facilities, up to and including the closing thereof, after the director approves the sale price. The director and the director of administrative services may, if it is determined to be in the best interests of the state, agree to sell surplus land for an amount less than the formal appraised value but shall not sell any land for less than two-thirds of the formal appraised value.

(B) Coincident with ~~his~~ the director's certification under division (A)(3) of this section concerning lands which may be sold, the director shall give written notice of ~~his~~ the intention to sell the lands by certified mail to the executive officer of each county, township, municipal corporation, and school district within which the lands are situated. In each notice, the

director shall specify the conditions under which the lands shall be sold, including whether the lands will be sold as a single unit or sold in specific parcels that ~~he~~ the director designates, and shall solicit from the subdivision offers to purchase the lands in accordance with the conditions ~~he~~ the director has specified and at a price equal to the preliminary appraised value determined pursuant to division (A)(2) of this section. If, within thirty days of having certified the lands to the auditor of state under division (A)(4) of this section, the director receives from the executive officer of a subdivision a written offer to purchase the lands at or above the price specified in ~~his~~ the director's original notice to the officer, provided such offer otherwise complies with the conditions of purchase specified in ~~his~~ the director's original notice, the director shall forthwith enter into an agreement to sell the lands to the subdivision. The agreement shall incorporate any and all terms that are acceptable to both parties and that are consistent with the terms specified in the director's original notice. If no offer to purchase is received by the director within the thirty-day period provided in this division, the director's original notice shall be considered withdrawn and ~~he~~ the director shall be under no obligation to sell any of the lands specified in the notice to the subdivision. If two or more offers to purchase the same parcels of land are received by the director within the required time period from the executive officers of two or more subdivisions, the director shall accept the offer or offers to purchase that ~~he~~ the director considers to be in the best interests of the state and of the department and shall proceed to enter into agreements of sale pursuant to this division. If all of the director's original notices relating to a given parcel of land become withdrawn, ~~he~~ the director may thereupon proceed to sell the parcel as otherwise provided in this section. No subdivision may commence an action to enforce the provisions of this division, or to seek any other legal or equitable remedy relative to this division, with respect to any lands certified to the auditor of state under division (A)(4) of this section, except within sixty days of the date on which the lands were so certified.

(C) Any agreement under this section shall be at such terms as will be in the best interests of the state and the department of mental retardation and developmental disabilities. However, the terms of any agreement for sale shall include a provision that the purchaser will abide by any comprehensive plan for the area that has been adopted by the local government in which the property is located before the parties enter into the agreement. No lease shall be of a duration greater than forty years. No agreement, except an agreement entered into under division (B) of this section, shall be entered into before the proposal to sell or lease the land or facilities has been advertised once

each week for four weeks in a newspaper of general circulation in every county in which the lands or facilities are located and if the preliminary appraised value of the land to be sold or leased is more than one hundred thousand dollars advertisement shall be made once each week for four weeks in at least two newspapers in the state having a daily circulation of one hundred thousand or more. If a city in this state is served by more than one newspaper having a circulation of one hundred thousand or more, advertisement may be made in only one of the newspapers serving the city.

(D) Each deed or lease prepared and recorded pursuant to this section shall contain a recital stating that all provisions of this section have been complied with. The recital shall be considered binding and conclusive against all subdivisions of the state provided no action has been commenced pursuant to division (B) of this section. Any deed or lease containing such a recital shall be conclusively presumed to have been executed in compliance with this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned.

(E) Except as otherwise provided in this division, all moneys received from the sale or lease of lands and facilities under this section shall be deposited in the state treasury to the credit of the general revenue fund. All moneys received from the sale or lease of lands and facilities under this section that were purchased with funds from the mental health facilities improvement fund created by division (F) of section 154.20 of the Revised Code shall be credited to the mental health facilities improvement fund.

(F) Nothing in this section shall be construed as establishing a precedent for the disposal of state lands and facilities by other departments of the state.

Sec. 5528.19. Upon the payment in full of all interest, principal, and charges for the retirement of all bonds and other obligations which may be issued pursuant to Section 2g of Article VIII, Ohio Constitution<u>,</u> and sections 5528.10 and 5528.11 of the Revised Code, the commissioners of the sinking fund shall make a certification of such fact to the clerk of the senate, the ~~executive secretary~~ <u>chief administrative officer</u> of the house of representatives, and the treasurer of state.

Upon the receipt of such certification<u>,</u> the treasurer of state shall transfer all moneys remaining to the credit of the highway improvement bond retirement fund, created by section 5528.12 of the Revised Code, to the highway obligations bond retirement fund created by section 5528.32 of the Revised Code.

Sec. 5528.56. (A) The treasurer of state on behalf of the commissioners of the sinking fund, on or before the fifteenth day of July of each fiscal year, shall certify to the office of budget and management the total amount of

neys required during that fiscal year to meet in full all payments of bond service charges and financing costs which are not to be paid from the proceeds of the bonds anticipated or of renewal notes issued pursuant to section 5528.54 of the Revised Code.

(B) When the moneys to the credit of the bond service fund are sufficient to provide for payment of the amount required as stated in the certificate provided for in division (A) of this section, the commissioners shall certify such fact to the office of budget and management.

(C) If and so long as the moneys to the credit of the bond service fund, together with any other funds available for the purpose, are insufficient to meet in full all payments of the amount required as stated in the certificate provided for in division (A) of this section, the commissioners shall at such times as provided in the bond proceedings, and in any event within ten days prior to the date any such payments are due, certify to the office of budget and management the total amount of such bond service charges and financing costs, the amount of moneys to the credit of the bond service fund and any other funds available for the purpose, and the amount of additional money necessary to be credited to the bond service fund to meet in full the payment of such bond service charges and financing costs when due.

(D) If upon the certification provided for in division (A) or (C) of this section, or if on presentation of obligations for payment of bond service charges when due, there are insufficient moneys in the bond service fund and any other funds available for the purpose for payment of bond service charges and financing costs as so certified, the commissioners, upon consultation with the director of budget and management, shall transfer a sufficient amount to the bond service fund from the receipts derived from all excises, taxes, and other revenues of the state, including those referred to in Section 5a of Article XII, Ohio Constitution, which excises, taxes, and revenues are and shall be deemed to be levied, in addition to the purposes otherwise provided for by law, to provide in accordance with sections 5528.51 to 5528.56 of the Revised Code and the bond proceedings for the payment of bond service charges and financing costs. The levy and collection of such excises, taxes, and revenues and their application to the payment of the bond service charges and financing costs, as provided by this section, shall continue and the state hereby covenants with the holders of such obligations and providers of credit enhancement facilities be continued, so long as such obligations are outstanding. In each year that moneys referred to in Section 5a of Article XII, Ohio Constitution, pledged to the payment of bond service charges on obligations issued pursuant to sections 5528.51 to 5528.55 of the Revised Code are available for that purpose, such

moneys shall be appropriated thereto and the required application of any other excises, taxes, and revenues shall be reduced in corresponding amount.

(E) The general assembly may from time to time repeal or reduce any excise, tax, or other source of revenue pledged pursuant to Section 2m of Article VIII, Ohio Constitution, and this section to the payment of the bond service charges, and may levy any new or increased excise, tax, or revenue source to meet the pledge to the payment of bond service charges on outstanding obligations of the state's full faith and credit, revenue, and taxing power. Nothing in this division authorizes any impairment of the obligation of this state to levy, charge, and collect sufficient excises, taxes, and revenues to pay bond service charges on obligations outstanding in accordance with their terms.

(F) Upon the payment or provision for payment in full of all bond service charges on all obligations in accordance with their terms, the commissioners shall certify that fact to the clerk of the senate, the ~~legislative~~ clerk of the house of representatives, the treasurer of state, and the office of budget and management. Upon making such certification the treasurer of state shall transfer to the general revenue fund all moneys then remaining to the credit of the bond service fund and not needed for the purpose of paying bond service charges.

SECTION 2. That existing sections 101.23, 101.271, 101.272, 101.29, 101.31, 101.32, 101.33, 101.51, 101.52, 101.55, 101.61, 101.63, 101.65, 101.66, 101.69, 102.09, 103.15, 121.40, 123.151, 124.18, 125.081, 125.31, 125.42, 125.47, 125.48, 125.58, 125.76, 127.16, 129.52, 129.56, 129.64, 149.07, 149.09, 149.091, 149.13, 149.17, 164.11, 1555.14, 2331.11, 3317.09, 4121.03, 5117.12, 5119.39, 5123.231, 5528.19, and 5528.56 and sections 101.25, 101.50, 101.53, 101.62, 102.64, 101.67, 125.59, 125.60, 125.63, and 149.06 of the Revised Code are hereby repealed.

SECTION 3. That Section 192 of Am. Sub. H.B. 215 of the 122nd General Assembly be amended to read as follows:

"Sec. 192. <u>Governor's Community Service Council</u>

The administrative duties of the Department of Youth Services pertaining to the Governor's Community Service Council as imposed by section 121.40 of the Revised Code are transferred to the Governor's Community Service Council on July 1, 1997.

The Council shall employ, promote, supervise, and remove employees as needed in connection with the performance of its duties under section

121.40 of the Revised Code and may assign duties to employees to the extent necessary to achieve the most efficient performance of its duties and functions, and to that end may establish, change, or abolish positions, and assign and reassign duties and responsibilities of employees of the Council.

Employees of the Department of Youth Services, as determined by the collective bargaining agreement in force on the effective date of this section, who are the direct staff of the Governor's Community Service Council shall be transferred to and become employees of the Council on July 1, 1997.

Employees transferred under this section shall retain their civil service qualifications and status. Effective with the first pay period in which personnel services expenses are charged against fiscal year 1998 appropriations, the transferred employees shall retain their respective civil service classifications and status and any rights conferred by Chapter 4117. of the Revised Code as it now exists or is hereafter amended. Nothing in section 121.40 of the Revised Code, as amended by ~~this act~~ Am. Sub. H.B. 215 of the 122nd General Assembly, shall be construed as eliminating or interfering with Chapter 4117. of the Revised Code, or the rights and benefits conferred under that chapter to public employees or to any bargaining unit provided by collective bargaining agreements negotiated under Chapter 4117. of the Revised Code.

Notwithstanding section 124.13 of the Revised Code, all vacation leave time and other benefits earned by these employees of the Department of Youth Services shall be deemed to have been earned by them as employees of the Council.

Effective July 1, 1997, whenever reference is made in any law, contract, or document to the functions of the Department of Youth Services as fiscal agent to the Governor's Community Service Council, the reference shall be deemed to refer to the Department of Aging, and "fiscal agent" has the meaning given in division (D) of section 121.40 of the Revised Code as amended by ~~this act~~ H.B. 215. The Department of Aging shall have no responsibility for or obligation to the Council prior to July 1, 1997. Any validation, cure, right, privilege, remedy, obligation, or liability shall be retained by the Council.

On or before July 1, 1997, the Department of Aging and the Council shall enter into an agreement regarding the relationship between the Department of Aging as fiscal agent and the Council.

On or before July 1, 1997, the Department of Youth Services and the Department of Aging shall enter into an agreement for the transfer of all assets, books, records, documents, files, transcripts, and other material pertaining to the Council.

The Council shall maintain its office in Columbus and may hold sessions at any place within the state.

The Council may acquire facilities, equipment, and supplies necessary to house the Council, its employees, and files and records under the Council's control and to discharge any duty imposed upon it by law. The expense of those acquisitions shall be audited and paid in the same manner as other state expenses. For that purpose, the Council shall prepare and submit to the Office of Budget and Management a budget for each biennium according to sections ~~101.55~~ 101.532 and 107.03 of the Revised Code. The budget submitted shall cover the costs of the Council and staff in the discharge of any duty imposed upon the Council by law."

SECTION 4. That existing Section 192 of Am. Sub. H.B. 215 of the 122nd General Assembly is hereby repealed.

SECTION 5. The Office of Clerk of the House of Representatives is a continuation of the former Office of Legislative Clerk of the House of Representatives. The individual holding office as Legislative Clerk of the House of Representatives immediately before the effective date of this act holds office as Clerk of the House of Representatives on and after the effective date of this act.

SECTION 6. The Office of Chief Administrative Officer of the House of Representatives is a continuation of the former Office of the Executive Secretary of the House of Representatives. The individual holding office as Executive Secretary of the House of Representatives immediately before the effective date of this act holds office as Chief Administrative Officer of the House of Representatives on and after the effective date of this act.

SECTION 7. Section 125.48 of the Revised Code is presented in this act as a composite of the section as amended by both Am. Sub. S.B. 99 and Am. Sub. S.B. 162 of the 121st General Assembly, with the new language of neither of the acts shown in capital letters. Section 127.16 of the Revised Code is presented in this act as a composite of the section as amended by both Am. Sub. H.B. 215 and Sub. H.B. 408 of the 122nd General Assembly, with the new language of neither of the acts shown in capital letters. This is in recognition of the principle stated in division (B) of section 1.52 of the Revised Code that such amendments are to be harmonized where not substantively irreconcilable and constitutes a legislative finding that such is the resulting version in effect prior to the effective date of this act.

______________________________________

*Speaker* ___________________ *of the House of Representatives.*

______________________________________

*President* ___________________ *of the Senate.*

Passed ___________________________, 20____

Approved ___________________________, 20____

______________________________________

*Governor.*

The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

______________________________________________________________

*Director, Legislative Service Commission.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the ____ day of ____________, A. D. 20____.

______________________________________________________________

*Secretary of State.*

File No. __________ Effective Date _____________________