se: 2:26-cv-01025-EAS-KAJ Doc #: 21-16 Filed: 09/25/26 Page: 1 of 2 PAGEID #: 3



Petitioner should not have an inspection: but the Judge (*Chambre*, Justice), having looked into the authorities, refused to make the Order, observing, that he could find no precedent for it.

Mr. *Bell*, in support of the Petition: Mr. *Cullen* opposed it.

The *Lord Chancellor* [Eldon]. The learned Judge was perfectly right in refusing to interfere upon his application; though upon a different [163] ground I must grant it. This is the Commission of the Great Seal. There are different modes of proceeding in these cases. In several instances the *Lord Chancellor* has ordered the Commission and all the proceedings to be deposited in the Secretary's Office, sometimes with a view to a criminal prosecution, as for a conspiracy: so, if the bond is assigned, the proceedings are deposited. Another course is not to assign the bond; which is frequently not beneficial; as, though to a certain extent it secures so much, the party can obtain no more than the penalty: but, if he brings an action on the case, superseding the Commission, I must give him the means of supporting that action.

The Order was made with costs.(1)

(1) *Ex parte Bernal*, 11 *Ves.* 557. As to the Solicitor's lien, *Quære. Ex parte Shaw*, 1 *Jac.* 270. As to the production of Records, Depositions, &c., see 1 *Ves. jun.* 152, and the note.

RUSSELL, *Ex parte*, *July* 24*th*, 1812.

[S. C.] 1 *Rose*, 278.—Protection of a bankrupt from Arrest under an Extent, while attending the Commissioners on the day appointed for his examination and remaining in another room in the same house during an interval of adjournment on that day, on the general principle of law, protecting a Witness. The Order to discharge made on the gaoler, not, as in the case of a private creditor, on the party.

The Petitioner under a Commission of Bankruptcy against him, executed at *Ipswich*, attended there, and surrendered, on the day, appointed for his examination; which was adjourned to the next day: when the Commissioners, finding that the presence of a person, who was not then in the way, would be necessary, farther [164] adjourned the examination from two o'clock to seven in the evening. The bankrupt left the room: but did not quit the house; and, while he was sitting in another room during the interval, was arrested upon an extent, sued out by the Commissioners of Excise for a debt due by him to the Crown. He was brought in the custody of the officer before the Commissioners; who, conceiving the arrest to be illegal, refused to proceed in the examination; and he was conveyed to prison. He presented this Petition, praying to be discharged.

Sir *Samuel Romilly*, in support of the Petition, insisted, that the arrest was illegal; and the bankrupt was entitled to be discharged upon the principle of the common law, as a witness attending under a regular process to be examined; that he was still in attendance on the Commissioners notwithstanding their adjournment; and in this respect the Crown stood in the same situation as a subject.

Mr. *Cooke*, for the Commissioners of Excise. The Commissioners submit, but do not press, this question. The case of the Crown is very different from that of any common creditor. The protection of a bankrupt is not that of a witness: nor does it depend on any general jurisdiction. It is a special protection from his creditors, and confined to debts, given to him by the Act of Parliament (stat. 5 *Geo.* II. *c.* 39, *s.* 5): but the Crown is not bound by the Bankrupt Laws. Had the protection existed by the common law, it would have been unnecessary to give it by Statute. This arrest is upon an extent in chief, for a debt directly to the Crown; not an extent in aid; which might raise the argument, that the creditor was bound by the Act of Parliament. An extent proceeds [165] at the same time against both the person and the goods; and issued in this instance on the affidavit of the officer, that the goods of the debtor were not sufficient. If this protection prevails, a Commission might be taken out with the very object of enabling a debtor to the Crown to escape its process. A difficulty occurs how the Order to discharge can be made upon the Crown; as it is made upon an individual party, not upon the officer; that he may not be left exposed to any consequence in case of an error.

The *Lord Chancellor* [Eldon]. In the case of a private creditor the Order is made in that form merely for convenience with reference to any question, that might arise between the gaoler and the Plaintiff in the action. It is perhaps difficult to make that Order directly upon the Crown: but there is no doubt of my authority to make it upon the gaoler, if he holds this person in custody without right; and we may have confidence in the Crown, that, if he ought not to have been arrested, the gaoler will suffer no inconvenience from discharging him.

The Courts of Common Law have by some of their decisions fully authorized me to say, that, if a bankrupt is necessarily and by compulsion attending the Commissioners, who have been considered as a Court of Justice for the purpose of protecting witnesses before them, he is entitled to protection against any one, attempting to arrest him during that attendance. (See 3 *Ves.* 351.) If that can be maintained, it is not necessary to consider, whether this Statute affects the Crown. My opinion is, that it does not (the *Lord Chancellor* distinctly so held, referring to this case, in *Ex parte Temple*, 2 *Ves. & Bea.* 391; 2 *Rose*, 22): but the general principle of law extends to the Crown as well as a subject. As the law therefore com-[166]-pels the Bankrupt to attend the Commissioners, while acting under that compulsion he cannot be arrested by the Crown any more than by a subject. He must therefore be discharged.

BALDWIN *v.* CAWTHORNE. *July* 25*th*, 1812.

Assignment of furniture, &c., by a debtor to his creditors in satisfaction of their debts, retaining possession under a demise at a rent, and afterwards taking a re-assignment from some on payment of their debts, with interest, though it would be void as against creditors, established between the parties against the Answer, insisting, that the Deed, though absolute upon the face of it with a fraudulent purpose, was intended only as a security; and the circumstances precluding any legal remedy.

The Bill stated, that the Defendant, being indebted to the Plaintiffs *Baldwin* and *James Barrow* and several other persons, and much embarrassed, an agreement was entered into, by which they agreed to accept an assignment of all his furniture, plate, &c., at his house at *Wyers* according to an appraisement, in satisfaction of their respective demands; that a receipt was accordingly signed by him on the 29th of *October* 1796, acknowledging to have received £1214, 3*s.* 3*d.* for the purchase of the several goods, &c., mentioned in a Schedule; they agreeing to let him have the enjoyment of the said effects, paying a yearly rent. Accordingly by indentures, dated the 29th of *October* 1796, reciting, that the Plaintiffs and the other creditors were the absolute owners of the said goods enumerated in a schedule, it was declared, that they should be used and occupied by the Defendant in his house at the annual rent of £91: he covenanting to keep them in repair, insured from fire, &c.; to restore them in good condition, and to give notice of any process by any creditor with a view to take possession of them.

The Bill charged, that the Defendant, having obtained possession, formed the design of defeating *Barrow*, who died in 1798, before the institution of the suit, by pro-[167]-curing an assignment from *Gillow* and some of the other creditors, who had entered into the contract, of their several proportions of the scheduled effects; thereby making him tenant in common with *Barrow* and the Plaintiff *Baldwin*.

The Bill prayed a specific performance of the covenants in the said indenture, an account of the rent, due under it from the Defendant, and a division or a sale of the goods; and, if the receipt and indenture should not be considered as a settled account, then an account of what was due to the Plaintiffs *Baldwin* and *Thomas Barrow*, the representative of *James*, &c.

The Defendant by his answer represented, that he did not sign the receipt, and execute the indenture, with any intention of making an absolute sale of the goods; but the object of the transaction under the advice of *Barrow* was merely to secure to him, the Plaintiff, and the *Gillows*, what should be due to them respectively; preserving to the Defendant the enjoyment of his goods.

The Decree, pronounced at the *Rolls*, declared the right of the creditors under the Deed of 1796 to the furniture, &c., as tenants in common, in proportion to