**EXHIBIT M**



1832.

Ex parte SWAIN.

Courts of Westminster Hall, without troubling the officer to attend him with the roll. And as the party cannot attend in Court to make his affidavit, he must be sworn before a Master in Chancery.

Ex parte JAMES GOODEN HELSBY, in the matter of THOMAS HELSBY the Elder, JAMES GOODEN HELSBY, and THOMAS HELSBY the Younger.

*January* 18.

The bankrupt, during the forty days allowed for his examination, is, for the benefit of his creditors, privileged from arrest even upon a *capias utlagatum*.

IN this case the petition to the Court of Review stated, that a commission issued on the 8th of November last against the petitioner *James Gooden Helsby*, jointly with the said *Thomas Helsby* the elder and *Thomas Helsby* the younger, under which the petitioner was declared a bankrupt; and that, pursuant to notice in the London Gazette, and the summons of the commissioners, he attended, on the 3d of January instant, at the Clarendon Buildings in South John Street, in Liverpool, and then and there surrendered himself, and duly submitted to be examined before the major part of the commissioners. That the examination of the petitioner continued till about half-past one o'clock, when the commissioners adjourned the same until the 8th of February next, and duly indorsed their protection on the summons. That immediately after the examination of the petitioner was concluded on the 3d of January, and at the moment the petitioner was preparing to leave the room in which the meeting was held, and return to his place of residence in Westmoreland Place, in Liverpool, one *John Ogle*, an officer of the Sheriff of Lancashire, came into the room and inquired which was *John Gooden Helsby*; upon which

: 2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 2 of 15 PAGEID #



1832.

Ex parte HELSBY.

the petitioner said he was that person, when the officer said he had a writ against the petitioner at the suit of *Brogden* and *Garland.* That the petitioner thereupon presented to him the protection of the commissioners, but that the officer said that would not protect him against the writ he then held. That the officer then arrested the petitioner upon a writ of *capias utlagatum,* in a certain action wherein it was stated that the petitioner had been outlawed at the suit of *John Brogden* and *James William Garland.* That *James Spyer* sued out the said writ as the plaintiff's attorney in the action, and came down to Liverpool for the express purpose, as the petitioner believed, of effecting his arrest, and insisted on the petitioner being conveyed to prison, and refused to release him out of custody, although *Spyer,* and *Ogle* the officer, both well knew that the petitioner had been attending before the commissioners for the purpose of passing his last examination, and that he had not then returned home after such examination. The petitioner then submitted to the Court, that *Spyer* and *Ogle* were guilty of a contempt of the authority of the great seal, in such arrest and imprisonment, and that the petitioner was entitled to be protected from arrest during the period aforesaid. That the petitioner was afterwards conveyed to Lancaster Castle, which was at such a distance from the residence of his solicitors, that his signature to the petition could not be attested by them, without considerable expense to the petitioner.

The petitioner therefore prayed, that the signature of his agent in the matter of this petition on his behalf might be deemed sufficient, and that the petitioner might be forthwith discharged out of custody, and that

: 2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 3 of 15 PAGEID #



1832.

Ex parte HELSBY.

the said *James Spyer* and *John Ogle* might be ordered to pay the costs of and incidental to this application, and also all costs occasioned by the arrest and the detention of the petitioner in custody.

*January* 16.

Mr. *Koe*, for the petitioner, had on a former day in this term, on an affidavit of the facts stated in the above petition, obtained an order of the Court, that the signature of the bankrupt to the petition might be dispensed with, and that service of the petition and order on the attorney in London, who had issued the writ, might be deemed good service.

*January* 18.

The petition came on this day for hearing, when it was agreed that the facts stated in the petition, as to the arrest, were correct, and that the cause of action for which the bankrupt had been arrested was an action of debt.

Mr. *Koe* now urged, in support of the prayer of the petition for the bankrupt's discharge, that the bankrupt was protected from arrest, not only by reason of the protection of the commissioners indorsed on his summons, but also by the common law; for he must be considered as a witness summoned to be examined before the commissioners for the benefit of the creditors; and the common law protects a witness against any civil process, even though issued by the crown. This principle is recognized by Lord *Eldon* in *Ex parte Russell* (*a*), which was the case of an extent issued against the bankrupt for a debt due to the crown, and in which Lord *Eldon* held, that though the crown was not bound by the statutes in bankruptcy, the bankrupt

(*a*) 1 Rose, 278.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 4 of 15 PAGEID #



1832.

Ex parte HELSBY.

was entitled to his discharge, on the spirit of the common law, affecting the crown equally with any other creditor. He admitted there was no case precisely in point with this, but he contended that there was no material difference between an arrest on a *capias utlagatum* and an arrest on an extent, for both were to compel the payment of a debt. And though in cases of felony the bankrupt would not be protected, yet process of outlawry in a civil action could not be considered as criminal process, so as to deprive the bankrupt of the protection allowed him for passing his examination.

Mr. *G. Richards*, contrà, cited *Ex parte Temple* (*a*), where Lord *Eldon* held, that a bankrupt is not by virtue of the commissioners' protection privileged from arrest at the suit of the crown, unless he be in *actual attendance* before them. The point in this case is, whether a *capias utlagatum* can be considered as civil process. The consequence of outlawry is, putting a man out of the protection of the law, so that he is incapable to bring an action for redress of injuries, and it is also attended with the forfeiture of all his goods and chattels to the king. [*Sir* A. PELL. You are aware that in an action at law the plea of outlawry is merely a plea in abatement.] In equity it is different. The plaintiff in the outlawry has no title to the goods of the party outlawed, until he obtains a grant from the crown; and the crown is not a trustee for the plaintiff, but it is merely out of grace that the king makes such grant; *Anon.* v. *Bromley* (*b*). In *Summervill* v. *Watkins* (*c*) it was held, also, that a party outlawed had no *locus standi in Curiâ*, so

(*a*) 2 Rose, 22. (*b*) 2 P. Wms. 269. (*c*) 14 East, 536.

: 2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 5 of 15 PAGEID #



1832.

Ex parte HELSBY.

as to be relieved from an arrest on a *capias utlagatum*, even though he had become bankrupt, and the plaintiff in the outlawry had proved under the commission and received a dividend on his debt. As to the question of costs, in case the Court decided in favour of the petitioner, he trusted that as no case was cited to show that the arrest was illegal, the Court would not at any rate visit the parties with the penalty of costs, when they were acting in the execution of the process of the law.

Mr. *Koe*, in reply. With respect to the last question as to the costs, the parties complained of knew well that the bankrupt was entitled to his protection, for express notice was given to them that he had just been examined before the commissioners; and he was, in fact, arrested in the very room where he had been examined, and when he was preparing to go home. *Spyers*, also, being an attorney resident in London, went unnecessarily to Liverpool for the express purpose of arresting the bankrupt. The cases cited on the other side related to a claim of property by the outlaw; but this is a case of personal liberty, and the writ on which the bankrupt was arrested is nothing but a civil process issued for the purpose of enforcing a civil demand. [*Sir* A. PELL. If you rely on the 117th section of 6 *Geo.* 4, c. 16, your petition and affidavit should have followed the terms of that section, and have alleged that the bankrupt produced the summons under the hands of the commissioners to the officer who arrested him, and gave the officer a copy thereof.] I rely on the spirit of the common law, and on what Lord *Eldon* says in *Ex parte Russell*.

1832.

Ex parte HELSBY.

*His Honor the* CHIEF JUDGE.—This being a question of great importance, and one entirely depending upon the principles of the common law,

*Cur. adv. vult.*

January 19.

*His Honor the* CHIEF JUDGE.—This case was argued before the Court yesterday, and as there was no express authority on the subject, and the case involved very nice and conflicting principles of law, the Court has taken time to consider of its judgment. The petition prays that a bankrupt, who, while attending before commissioners to pass his examination, was arrested on a writ of *capias utlagatum* in a suit instituted for the recovery of a debt, may be discharged out of custody. Two questions arise on the facts stated in this petition. 1. Whether the protection, afforded by the law to bankrupts and others attending Courts of justice, extends to process of outlawry. 2. Whether the personal disability of an outlaw deprives him of all *locus standi in Curiâ*, for the purpose of claiming his discharge.

The Court is of opinion, that the arrest was irregular, and that the petitioner is entitled to his discharge. The protection to bankrupts attending commissioners for examination is twofold: 1. Under the common law privilege of a witness attending a Court competent to enforce his attendance, which protects him *eundo, morando, et redeundo;* according to the doctrine laid down in *Ex parte Russell* (*a*), where Lord *Eldon* determined that a bankrupt attending the commissioners in obedience to their summons was protected from an arrest on an extent at the suit of the crown,

(*a*) 1 Rose, 278; 19 Ves. 163.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 7 of 15 PAGEID #



1832.

Ex parte HELSBY.

which is not in general bound by the bankrupt statutes; 2. By the express provision of the Bankrupt Act, 6 *Geo.* 4, c. 16, s. 117, which declares that "the bankrupt shall be free from arrest or imprisonment by any creditor in coming to surrender, and after such surrender, during the 42 days, and such further time as shall be allowed him for finishing his examination, provided he was not in custody at the time of such surrender." The statute then proceeds to give the bankrupt a remedy by action for specific damages, under certain conditions, which upon this motion it is unnecessary to discuss. Now in this case the petitioner was arrested immediately after a part examination by the commissioners, and whilst he was preparing to return home, his further examination having been adjourned till the 8th of February. He was arrested upon a *capias utlagatum,* founded on a judgment of outlawry in a civil suit for the recovery of a *debt.* He therefore stood equally protected by the common law on the one hand, and the provisions of the statute on the other, unless the nature of the process presents an answer to his claim. But it has been urged, that the nature of the process does present such answer; that it is not like the ordinary process, on which debtors are arrested; and that its immediate and avowed purpose is not to compel the defendant to answer the plaintiff in any plea, but is a command to the sheriff by the king to take the defendant, and have his body &c., "to do and receive what our Court before us shall consider of him in this behalf." In fact, however, this process is sued out by the creditor for the same single purpose and object, for which the common *capias* and latitat are sued, viz. to compel the defendant to pay

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 8 of 15 PAGEID



1832.

Ex parte HELSBY.

the debt for which the action is brought. In *form*, it is criminal process for contempt; in substance, it is civil process to enforce the payment of a debt. Will the *form* of the process then affect the privilege of the bankrupt? *In re M'Williams* (*a*) Lord *Redesdale* lays down the rule, that the thing to be considered is not the form of the process, but the cause of issuing it; and that every mode, by which a creditor can arrest a bankrupt for debt, comes within the meaning of the Bankrupt Act (*b*). That the process resorted to is process of contempt, therefore, signifies nothing; for the principle laid down by Lord *Redesdale* has been confirmed and acted upon in many cases in England, which decide that the process of contempt is considered as civil process for various purposes. Thus in *Ex parte Parker* (*c*), where a bankrupt, on returning from his examination before the commissioners, was arrested on an attachment for contempt, in not paying money pursuant to an award which had been made a rule of Court, Lord *Loughborough* ordered him to be discharged out of custody, upon the ground that the attachment was merely process to enforce the payment of money. So, again, in the *King* v. *Edwards* (*d*), Lord *Tenterden* says, "It has always been held, that attachments for nonpayment of money are in the nature of civil process to enforce the payment of a debt, and that persons in custody, under an attachment for disobedience of an order of Court for payment of money, are in custody for a civil debt, and that the debt is proveable under the commission." The same doctrine was also held by Lord *Eldon* in *Wall* v. *Atkinson* (*e*). Is it then any strain of this

(*a*) 1 Sch. & Lef. 174. (*b*) Irish Statute, 11 & 12 Geo. 3, c. 8, s. 28.
(*c*) 3 Ves. 554. (*d*) 9 B. & C. 652 (*e*) 2 Rose, 196.

1832.

Ex parte HELSBY.

general principle to apply it to a *capias utlagatum*, and to hold that an outlaw in a civil action is in the same condition? In *Hesse* v. *Wood* (*a*) it is said by *Gibbs*, J., that the process of outlawry is now used only as a proceeding in the suit to bring in the party, and that the reversing it is merely the reversing of an interlocutory judgment. There is a great distinction between outlawry in civil, and in criminal, cases. In the former it is treated as mere civil process; in the latter it is strictly criminal, and therefore may be taken out against peers, which in the former case it cannot. 1 *Hale, P.C.* 199. An outlaw, also, under civil process may be a witness, and should therefore be entitled to the protection of a witness; but an outlaw under criminal process cannot be a witness. Looking therefore at the *capias utlagatum* in this case as merely civil process to enforce the payment of a debt, I am of opinion, and such is the opinion of the whole Court, that the arrest of the petitioner while in attendance on the commissioners was illegal.

I come now to the second question,—has the petitioner any *locus standi in judicio*, to entitle him to claim the protection of the Court and his discharge from custody? When process of outlawry was extended to actions for debt, many of the legal disabilities attendant upon outlawry in criminal prosecutions followed; and amongst others, the outlaw was held incapable of suing in any Court, except to reverse his own outlawry. *Griffith* v. *Middleton* (*b*), *Jason* v. *Kite* (*c*). According to *Britton*, *Respondra a touts, mes nul respondra a luy*. And, upon this principle, a man outlawed in an action for a debt would be incompetent to claim in a Court of jus-

(*a*) 4 Taunt. 694. (*b*) Cro. Jac. 425. (*c*) Sid. 43.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 10 of 15 PAGEID





tice any civil right, in which he alone was interested, or a release from any personal responsibility to others, until he had obtained a *locus standi in judicio*, by appearing to reverse the outlawry. Upon this principle, the case cited at the bar of *Summervil* v. *Watkins* (*a*), and also the case before mentioned of *Griffith* v. *Middleton*, were decided. So, in like manner, it was held in the Common Pleas, in the case of *Loakes* v. *Holbeach* (*b*), that a party, who had been outlawed in the Court of King's Bench in an action to recover the arrears of an annuity, could not be heard in the Common Pleas on a motion to set aside the annuity, on the ground that where the object of the outlaw was *ad lucrandum*, there ought to be ability in the person, and that as the application made by the defendant was to gain by way of discharge from the annuity, which is the same as to gain by way of *perquisition*, that is, by suit in an action, the party could have no *locus standi in judicio*. But in all these cases, the advantage sought by the outlaw was a pecuniary gain or discharge, in which none but himself was interested, the denial of which involved no public inconvenience, and compromised no public policy. But the case before the Court stands on very different grounds. The protection afforded to witnesses and bankrupts is not given for their personal advantage; but, in the case of witnesses, it is for the benefit of the suitors, and the advancement of public justice, and is indeed the privilege of the Court, and not that of the witness. This appears from what Lord C. J. *De Grey* says in *Cameron* v. *Lightfoot* (*c*), which is cited by *Gibbs*, C. J. in *Nixon* v.

(*a*) 14 East, 536. And see also the case of *Beauchamp* v. *Tomkins*, 3 Taunt. 141.

(*b*) 4 Bing. 419. (*c*) 2 W. Bl. 1190.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 11 of 15 PAGEID



1832.

Ex parte HELSBY.

*Burt* (*a*). In the case of a bankrupt, his protection is for the benefit of the creditors at large; and it is contrary to the whole policy of the bankrupt laws, that one creditor should avail himself of the bankrupt's attendance before the commissioners, for the purpose of enforcing his own individual claim, to the common detriment of the rest of the creditors.

Looking therefore at this petition, as an application for the benefit of the creditors at large, and not merely for the personal advantage of the bankrupt,—considering also his protection as the privilege of the Court and of the creditors, in the same way that the privilege of an attorney is regarded as the privilege of his client, and the privilege of a member of parliament as the privilege of his constituents and of the public,—the Court is of opinion, that the petitioner ought to be discharged out of custody, and that the petitioner's costs of the arrest, and other incidental expenses should be paid out of the estate; but that so much of the prayer of the petition, as asks for costs against the solicitor and sheriff's officer, should be dismissed.

*His Honor Sir* A. PELL.—This is a case of considerable difficulty, and I own I have had much doubt upon it in my own mind. Upon the whole, however, I incline to concur with his Honor the Chief Justice in the opinion which he has delivered, more especially as this is an application in favour of the liberty of the subject; and every intendment should, therefore, be made against a *capias utlagatum* in a civil suit—a process which is now considered little more than a private execution. My difficulty in this case has arisen from the strong terms in

(*a*) 7 Taunt. 689.

which the law, with reference to outlawry, is laid down in many decided cases, as well as in all the text books. In *Co. Lit.* 128 it appears, that a person outlawed cannot regularly maintain an action; for by his contumacy he is out of the king's protection, and he shall have no privilege or benefit from that law, of which he is himself a violator, and to which he refuses to be amenable. And in the case of *Loukes* v. *Holbeach* (*a*), the Court of Common Pleas held, that an outlaw in a civil suit cannot be heard in Court to make a motion for his own benefit. In the case now before the Court, the application is by the bankrupt, being an outlaw, and it is made by his counsel for his benefit. There can be no doubt, that if the outlawry had been founded on criminal process, this application must have been refused. My first impression was, that the petition in this matter had been framed entirely on the 117th section of the 6 *Geo.* 4, c. 16; and had that been the case, as the petitioner has not complied with the conditions of that section, the petition could not have been sustained; unless, indeed, that part of the clause imposing those conditions could, as perhaps it might, be considered as merely with a view to the benefit of the party arrested, by enabling him to recover the penalties therein mentioned (*b*). The case of *Loukes* v. *Holbeach* (*a*) certainly

(*a*) 4 Bing. 419.

(*b*) The words of the 117th section are—" That the bankrupt shall be free from arrest or imprisonment by any creditor in coming to surrender, and after such surrender, during the said forty-two days, and such further time as shall be allowed him for finishing his examination, provided he was not in custody at the time of such surrender; and if such bankrupt shall be arrested for debt, or on any escape warrant, in coming to surrender, or shall after his surrender be so arrested within the time aforesaid, he shall, on producing the summons under the hands of the Commissioners to the officer who shall arrest him, and giving such officer a copy thereof, be immediately

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 13 of 15 PAGEID



1832.

Ex parte HELSBY.

appears, at first sight, to be very strong against this application; but there the party was suing for his own benefit, which an outlaw has clearly no power to do. In this case, however, the bankrupt stands in a different posture. The protection afforded him is for the benefit of his creditors, and not for himself alone. If he is arrested, therefore, while attending for their benefit, it is fit they should not be prejudiced by his detention. A great distinction arises where a party claims a personal advantage for himself, and where the application is for the benefit of others. The case of *Groves* v. *De Castro* (*a*) sufficiently proves, that a *capias utlagatum* in a civil suit is to be considered only as a private execution. Process of outlawry also in a civil suit does not prevent a man from being a witness, for his contumacy ought not to deprive others of their interest in his testimony. So in *Co. Lit.* 8 *a* it is laid down, that persons outlawed in debt, trespass, or the like, may be heirs. And in *Co. Lit.* 128 *a* it is said, that the disability of outlawry in the plaintiff is only pleadable where he sues in his own right, and not where he sues in *auter droit*. The same point is determined also in *Killigrew* v. *Killigrew*, 1 Vern. 184. According to the case of *Loukes* v. *Holbeach* (*b*), an outlaw may be relator for the benefit of

discharged; and if any such officer shall detain any such bankrupt after he shall have shown such summons to him as aforesaid, such officer shall forfeit to such bankrupt, for his own use, the sum of £5 for every day he shall detain such bankrupt, to be recovered by action of debt in any Court of Record at Westminster, in the name of such bankrupt, with full costs of suit." It would seem, therefore, that the production of the summons to the officer, and giving the officer a copy, are essential preliminaries only to an *action* against the officer for damages, and ought not to affect the right of the bankrupt to apply to the Court for his discharge from the imprisonment, under the first part of the above enactment.

(*a*) Bunb. 194.

(*b*) 4 Bing. 422.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 14 of 15 PAGEID



1832.

Ex parte HELSBY.

the crown, or a charity; and he may also prosecute an information for the king, though not if it is to procure any benefit for himself. One difficulty has struck my mind, which I do not know well how to reconcile, and it is this,—that though an outlaw in a civil suit may be examined as a witness, he is prevented from acting as a juror (*a*). I have before observed, that this is a case of considerable doubt; but when we contrast the personal liberty of the subject on the one hand, and the doubt as to the application of a severe law on the other, I think the latter should certainly give way, and I therefore agree that the petitioner ought to be discharged.

*His Honor Sir* J. CROSS.—As the Chief Justice has delivered the unanimous judgment of the Court, I have only to say, that I entirely agree in the opinion he has expressed.

*His Honor Sir* G. ROSE. also concurred.

Mr. *Koe* then urged,—in regard to the question of costs—that the Court had decided that the petitioner had been wrongfully arrested, and was entitled to be discharged, and yet had ordered him to pay the costs himself; for such might be the effect of the order, as it was possible that his estate might yield a surplus. He submitted, that the officer who arrested him, and the solicitor who directed the arrest, should pay the costs; or, at any rate, that the matter should stand over, without prejudice, till they could be heard.

(*a*) The reason why an outlaw is deemed incapable of serving on a jury, with great deference to the learned Judge, appears to be sufficiently obvious. A man must be possessed of certain *property* in order to qualify him as a juror; but an *outlaw* can have no property whatever, until his outlawry is reversed.

2:26-cv-01025-EAS-KAJ Doc #: 21-17 Filed: 09/25/26 Page: 15 of 15 PAGEID



1832.

Ex parte HELSBY.

*His Honor the* CHIEF JUDGE.—We have relieved the officer from the liability of costs without hearing him, and have thrown the charge of them on the estate, as it was for the benefit of the assignees and creditors that the petitioner was in attendance. We consider this application as if made by them, for if it were for the benefit of the party himself, he would have no *locus standi in Curiâ.*

Order made accordingly for the discharge of the petitioner, and that the costs (*a*) of the petition should be paid out of the estate, the bankrupt undertaking to bring no action.

(*a*) With respect to the question of costs, it was held by Lord *Eldon*, in *Ex parte Woods*, 1 Rose, 46, 18 Ves. 1, which was a similar case of a sheriff's officer arresting a bankrupt during his protection, that the costs must be paid by the officer. " In every case of privilege," his Lordship says, " and more particularly in that of a bankrupt, parties guilty of a violation of it must abide by the consequences : the bankrupt must, at the costs of the officer, be put in the situation he was in before the arrest."

*Coram Lord Chancellor.*

## Ex parte LOWE, in the matter of AARON.

*Westminster Hall.*

*January* 20.

The Lord Chancellor has no jurisdiction to hear an original petition in bankruptcy since the 1 & 2 *W.* 4. c. 56.

A PETITION for a supersedeas had been heard before the Vice-Chancellor, and dismissed upon a preliminary objection. A petition of appeal was then presented to the Lord Chancellor, praying him to rehear the matter, and that the order of the Vice-Chancellor might be discharged; which last petition had been answered in the usual way by the Lord Chancellor, before whom the parties were directed to attend on the next day of petitions, which was on the 10th January, 1832, the day previous to that in which