**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSICA D'VARGA, Administrative and Presiding Judge, Franklin County Municipal Court, in her official capacity,<br><br>Defendant. | No. 26-cv-01025-EAS-KAJ<br><br>Judge Edmund A. Sargus, Jr.<br><br>Magistrate Judge Kimberly A. Jolson |

**BRIEF OF *AMICI CURIAE* FIVE FORMER OHIO JUDGES IN SUPPORT OF DEFENDANT FRANKLIN COUNTY MUNICIPAL COURT ADMINISTRATIVE AND PRESIDING JUDGE JESSICA D'VARGA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**


INTERESTS OF AMICI CURIAE ........ 1

PRELIMINARY STATEMENT ........ 2

ARGUMENT ........ 5

I. COURTHOUSE CIVIL IMMIGRATION ENFORCEMENT CHILLS IMMIGRANT COMMUNITIES' ACCESS TO THE COURT SYSTEM ........ *5*

A. ICE Courthouse Enforcement Policies Have Had a Chilling Effect on Immigrant Communities in Ohio ........ 6

B. ICE Courthouse Enforcement Policies Have Had a Chilling Effect on Immigrant Communities throughout the United States ........ 9

II. COURTHOUSE CIVIL IMMIGRATION ARRESTS INTERFERE WITH THE ADMINISTRATION OF JUSTICE ........ 12

A. Courthouse Civil Immigration Enforcement Interferes with the Administration of Justice by Disrupting Court Proceedings ........ 12

B. Courthouse Civil Immigration Enforcement Interferes with the Administration of Justice by Creating Confusion and Public Safety Issues ........ 15

CONCLUSION ........ 20

APPENDIX: LIST OF AMICI ........ 21

APPENDIX: JUDGE BROWN FACEBOOK POST ........ 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981) .................................................. 3

*Cox v. Louisiana*, 379 U.S. 559 (1965)........................................................................................ 4

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .................................................................................. 3

*Hastings v. City of Columbus*, 42 Ohio St. 585 (Ohio 1885)......................................................... 2

*Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325 (6th Cir. 2022) .......................... 3

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) .................................................. 3

*New York v. U.S. Immigr. & Customs Enf't*, 431 F. Supp. 3d 377 (S.D.N.Y. 2019)...................... 5

*New York v. U.S. Immigr. & Customs Enf't*, 466 F. Supp. 3d 439 (S.D.N.Y. 2020), *vacated on other grounds* 2023 WL 2333979 (2d Cir. Feb. 28, 2023)............................ 10

*Printz v. United States*, 521 U.S. 898 (1997)................................................................................ 3

*United States v. Cnty. of Washtenaw*, -- F. Supp. 3d --, 2026 WL 2453724 (E.D. Mich. 2026) ......................................................................................................... 4

*United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025) ........................................... 3, 6

*United States v. State of New Jersey*, 2026 WL 2621025 (D.N.J. Sept. 4, 2026).......................... 3

*Velazquez-Hernandez v. U.S. Immigr. & Customs Enf't*, 500 F. Supp. 3d 1132 (S.D. Cal. 2020) ......................................................................................................... 6

*Zumsteg v. Am. Food Club, Inc.*, 143 N.E.2d 701 (Ohio 1957)..................................................... 2

**Statutes**

Ohio Rev. Code Ann. § 2331.11 ..................................................................................................... 2

Ohio Rev. Code Ann. § 2331.11(A)(4)............................................................................................ 2

**Rules**

Franklin County Court of Common Pleas Local Rule 111.01 ...................................................... 13

Franklin County Court of Common Pleas Local Rule 112............................................................ 8

Franklin County Municipal Court Local Rule 2.10 ............................................................. passim

**<u>Other Authorities</u>**


@Judge Chris Brown, Facebook (Mar. 3, 2026) .......... 4, 9, 13

American Civil Liberties Union, *Freezing Out Justice – How immigration arrests at courthouses are undermining the justice system* (May 3, 2018) .......... 10

*Amicus* Brief of N.Y. District Attorneys in Support of Defs.' Mot. to Dismiss the Compl., *United States v. New York*, No. 1:25-cv-744 (N.D.N.Y. Aug. 17, 2025) .......... 11

Angela Carella, *Federal Immigration Agents Step Up Enforcement at Stamford Courthouse*, CT Examiner (Aug. 12, 2025) .......... 18

Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement (ICE) Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings*, Ceres Policy Research (Oct. 2019) .......... 10

*Attorney: Immigration agents are targeting Central Ohio traffic courts*, NBC4 Columbus (Feb. 27, 2018) .......... 16

Brittny Mejia, *In rare move, ICE drags criminal defendant out of a federal courtroom*, L.A. Times (Mar. 20, 2026) .......... 14

Carla Rogner, *Activists push for rule change after 20 ICE arrests at Franklin County Municipal Court in 2025*, WBNS 10 (Feb. 12, 2026) .......... 8

Cora Engelbrecht, *Fewer Immigrants Are Reporting Domestic Abuse. Police Blame Fear of Deportation.*, N.Y. Times (June 3, 2018) .......... 10

Courtney Francisco, *Clerk of courts, judges, attorneys create task force to help migrants feel safe in courthouse*, WCPO 9 (Feb. 11, 2020) .......... 6, 7

Courtney Francisco, *ICE agents have been entering Hamilton County courthouse to detain migrants*, WCPO 9 (Jan. 16, 2020) .......... 17

E-mail from Chief Criminal Judge Andrew R. Erwin to WSH-Judges, et al. (June 1, 2018) .......... 15

Holly Ramer, *A Venezuelan man was tackled in a New Hampshire courthouse and sent by ICE to Texas*, AP News (Apr. 14, 2025) .......... 18

Hon. Carl Aveni, *Due Process, Above All Else…*, ABA (Apr. 22, 2026) .......... 5, 13

Hon. Michael P. Donnelly, *The DOJ's threat to Franklin County Court over ICE arrests is far from over | Opinion* (Sept. 17, 2026) .......... 1

ICE Out of Courts Coalition, *Safeguarding the Integrity of Our Courts: The Impact of ICE Courthouse Operations in New York State* (2019) .......... 10

Imani Clement, *ICE mistakenly detains teenage judicial intern outside Providence courthouse*, WCVB 5 (Nov. 21, 2025) ................................................................. 17

Immigrant Defense Project, *Section 4: Statements from Chief Judges, Governors, Prosecutors, Attorneys General, and Bar Associations* .................................................... 9

Isabel Cleary, *Wife of man detained by ICE in hallway of Franklin County traffic court says community is 'very afraid'*, NBC4 Columbus (June 13, 2025) ............................... 16

James Queally, *Fearing deportation, many domestic violence victims are steering clear of police and courts*, L.A. Times (Oct. 9, 2017) ........................................................... 10

Jim Haddadin, *Immigration enforcement officers arrest two men inside Stamford courthouse*, CT Mirror (Aug. 12, 2025) ............................................................... 18

Joe Bruno, *Four taken into ICE custody at Mecklenburg County Courthouse*, WSOC-TV (Feb. 24, 2026)........................................................................................ 14

Jordan Laird, *Public defenders call on Franklin County Municipal Court judges to stop cooperating with ICE*, Columbus Dispatch (Aug. 5, 2025)............................................... 8

Jusolyn Flower et al., *RI judge intervenes after ICE wrongfully detains Superior Court intern*, WPRI 12 (Nov. 21, 2025) ........................................................................ 17

Katie Geniusz, *Central Ohio immigrants fear traffic court, renewing work visas due to possible ICE presence*, WOSU 89.7 NPR News (June 10, 2025) ..................................... 8

Kelly O'Brien, *Agents who detained man at Nashua courthouse were working with ICE, News 9 learns*, WMUR 9 (Apr. 8, 2025) ...................................................................... 18

Letter to Ronald D. Vitiello, Acting Dir. of U.S. Immigr. & Customs Enf't (Dec. 12, 2018) .................................................................................................. 6, 12

Mary Markos et al., *Judge dismisses case against man detained by ICE mid-trial, finds agent in contempt*, NBC Boston (Mar. 31, 2025) .......................................................... 14

Orders in *Commonwealth v. Martell Lebron*, 2001 CR 000384 (Boston Municipal Ct.)............. 14

Press Release, Franklin County Court Issues Rules on Civil Immigration Enforcement at Courthouse (Feb. 28, 2025)........................................................................... 7, 8

Simón Rios and Rachell Sanchez-Smith, *ICE agents are staking out local courthouses. As they've roamed the halls, Mass. court arrests tripled*, NHPR (Dec. 17, 2025)..... 11, 15

Tyler Lane, *Chesterfield officials say ICE courthouse detainments are causing people to not show up for court*, CBS 6 News (July 18, 2025) .................................................. 11

WLWT Digital Staff, *New task force launching to protect immigrants, minorities in Hamilton County courthouse*, WLWT 5 (Feb. 11, 2020) .................................................. 7

Yesenia Amaro, *Video shows questionable ICE arrest inside Oregon Courthouse*, The Oregonian (Apr. 3, 2026) ........................................................................................ 15

## INTERESTS OF *AMICI CURIAE*

We are five former Ohio state judges and justices who have dedicated our careers to safeguarding the rule of law and ensuring our courts are accessible to all. Our combined experience includes more than 100 years of service on the bench, including serving as Chief Justice of the Supreme Court of Ohio, Associate Justice of the Supreme Court of Ohio, and judges on the Franklin County Probate Court, Franklin County Court of Common Pleas, Franklin County Municipal Court, Cuyahoga County Court of Common Pleas, and Cleveland Municipal Court. We respectfully submit this memorandum, as *amici curiae* (full list in the Appendix), in support of Defendant Franklin County Municipal Court Administrative and Presiding Judge Jessica D'Varga's Opposition to the Government's Motion for a Preliminary Injunction. (ECF No. 21.)

As former judges, we understand how civil immigration activities are likely to affect the day-to-day work of Ohio's judges and its courthouses. As one of us wrote in an op-ed that was published last month in *The Columbus Dispatch*:

> During my 14 years as a trial judge and six years on the Supreme Court of Ohio, I saw daily how completely the justice system depends upon people entering a courthouse and telling the truth. If a courthouse becomes a predictable location for unrelated civil arrests, word will spread quickly. Witnesses will stay home. Victims will hesitate to seek help. Defendants may fail to appear. Cases will be delayed or dismissed.[1]

We write to detail how warrantless, civil courthouse arrests are inimical to the proper functioning of our courts and, as such, constitute a severe encroachment on a core feature of state sovereignty.

---

[1] Hon. Michael P. Donnelly, *The DOJ's threat to Franklin County Court over ICE arrests is far from over | Opinion* (Sept. 17, 2026), https://www.dispatch.com/story/opinion/columns/guest/2026/09/17/courts-cant-become-ice-traps-they-must-remain-places-of-justice-ohio/91693819007/.

## PRELIMINARY STATEMENT

Franklin County Municipal Court Local Rule 2.10 ("Rule 2.10") prohibiting civil arrests in the courthouse is vital to the court's ability to fully serve its community. Rule 2.10 is derived from Ohio's statutory privilege, first adopted more than two centuries ago, that immunizes court participants from civil arrest not only in the courthouse, but also while traveling to or from court. This statutory privilege "arises out of the authority and dignity of the court" and "lies in the necessity for the uninterrupted administration of the judicial process." *Zumsteg v. Am. Food Club, Inc.*, 143 N.E.2d 701, 703 (Ohio 1957) (citation and internal quotation marks omitted). As judges across the nation, including in our State, have recognized, federal civil immigration enforcement actions in state courthouses chill immigrant communities' access to the court system and significantly interfere with the administration of justice by creating confusion, diverting court resources, and disrupting court proceedings.

Even before Ohio became the 17th state, the legislature governing the Northwest Territory recognized the importance of immunizing individuals from civil arrest while attending and traveling to and from the courthouse. This privilege against civil arrest is a rule of "ancient origin" that has "long been settled and liberally enforced," dating back "as early as [King] Henry VI" — that is, to the 15th century. *Zumsteg*, 143 N.E.2d at 703 (citation omitted). Indeed, it has remained in place as a statutory privilege in Ohio since its initial codification in 1799. *See, e.g.*, Ohio Rev. Code Ann. § 2331.11; *Zumsteg*, 143 N.E.2d at 704; *Hastings v. City of Columbus*, 42 Ohio St. 585 (Ohio 1885). Now codified at Section 2331.11 of the Ohio Revised Code, it confers a "privilege from arrest" on "[a]ttorneys, bailiffs, clerks of courts, sheriffs, coroners, constables, plaintiffs, defendants, jurors, and witnesses, and other officers or employees of the court, while going to, attending, or returning from court." Ohio Rev. Code Ann. § 2331.11(A)(4).

Rule 2.10 similarly protects the integrity and functions of Ohio's judicial system and thereby enforces powers reserved to our State by the Tenth Amendment. *See Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991) ("[T]he States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."). "[S]tate courts quintessentially fall within the traditional purview of state government," and "[t]heir functions . . . fall 'exclusively' within it." *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 331 (6th Cir. 2022) (citation and internal quotation marks omitted). Any claim that a federal law preempts the state exercise of such authority must overcome "the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 316 (1981) (citations omitted).

In addition, the Government's requested relief would unconstitutionally "conscript state court officers to expend state time and resources . . . in order to help ICE enforce the federal civil immigration laws." *United States v. New York*, 810 F. Supp. 3d 329, 355 (N.D.N.Y. 2025). "[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). The principle, known as the "anticommandeering" doctrine, prohibits federal actions that dictate what state officials may or may not do. *See, e.g.*, *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 475 (2018). Pursuant to this doctrine, courts have repeatedly held that ICE policies that require states or localities to allow federal officials to use their property for immigration enforcement activities, including to facilitate warrantless civil arrests, unconstitutionally commandeer state resources. *See, e.g.*, *United States v. State of New Jersey*, 2026 WL 2621025, at *11-12 (D.N.J. Sept. 4, 2026) (granting New Jersey's motion to dismiss the Government's challenge to a state

executive order prohibiting immigration enforcement on state property without a judicial warrant, including on anticommandeering grounds, and collecting cases upholding similar prohibitions); *United States v. Cnty. of Washtenaw*, -- F. Supp. 3d --, 2026 WL 2453724, at *21 (E.D. Mich. 2026) ("[T]o the extent that the government reads the INA to prohibit the County from enacting such warrant requirements in locally-owned property in the first place . . . this reading runs right into the anti-commandeering doctrine.").

At its core, Rule 2.10 was adopted to safeguard "the free and untrammeled exercise of [the Court's] judicial functions," Rule 2.10(A), which the Supreme Court has characterized as "part of the very foundation of our constitutional democracy." *Cox v. Louisiana*, 379 U.S. 559, 562 (1965). This brief focuses on two of the many ways in which the Government's requested relief would undermine that foundation and the rule of law.

First, ICE courthouse enforcement policies have made courthouses places to fear for many members of immigrant communities, leading them to avoid courthouses altogether or limit their interactions with courts. As Franklin County Court of Common Pleas Judge Chris Brown recently wrote based on his courtroom experience (discussed in more detail below), "[w]hatever you feel about these policies, the practical effect is to bar the courthouse to victims, witnesses, and other litigants." (@Judge Chris Brown, Facebook (Mar. 3, 2026) (the "Judge Brown Facebook Post").)[2] He further stated that "[t]hese policies serve no one and accomplish nothing except to deepen fear of the justice process." (*Id.*) Franklin County Court of Common Pleas Judge Carl Aveni similarly wrote about "the chilling effect these arrests have on immigrant communities," stating:

> State trial courts are the front line for American due process. We bear unique responsibilities under the Fifth and Fourteenth Amendments to ensure procedural fairness and just outcomes on the most fundamental questions of public safety in

[2] For the Court's convenience, we include a copy of the Judge Brown Facebook Post in the Appendix.

> our communities. We can't do that critical job if victims, witnesses, and defendants are too scared to come forward.[3]

Accordingly, invalidating Rule 2.10 would chill immigrant communities' access to the Franklin County Municipal Court and, in turn, impair the court's ability to fully serve its community.

Second, ICE courthouse enforcement policies interfere with the proper administration of justice because they disrupt court proceedings, create confusion, divert court resources, and endanger courthouse staff, court participants, and the general public. As one of our fellow judges accurately stated in a lawsuit seeking to enjoin these policies during the first Trump administration: "Courts cannot be expected to function properly if third parties (not least the executive branch of the government) feel free to disrupt the proceedings and intimidate the parties and witnesses by staging arrests for unrelated civil violations in the courthouse, on court property, or while the witnesses or parties are in transit to or from their court proceedings." *New York v. U.S. Immigr. & Customs Enf't*, 431 F. Supp. 3d 377, 380 (S.D.N.Y. 2019).

## ARGUMENT

### I. COURTHOUSE CIVIL IMMIGRATION ENFORCEMENT CHILLS IMMIGRANT COMMUNITIES' ACCESS TO THE COURT SYSTEM

Courts must be places where all individuals can safely access the justice system. Without this sense of safety, members of the public will be reluctant to come to court. Courts will then be unable to provide the protection and services on which individuals depend, and courts' promise of equal justice under the law will remain unfulfilled. Experiences from courts across the country, including in Ohio, demonstrate that ICE arrests of court attendees have made courthouses places

[3] Hon. Carl Aveni, *Due Process, Above All Else…*, ABA (Apr. 22, 2026), https://www.americanbar.org/groups/litigation/resources/litigation-news/2026/spring/due-process-above-all-else/?abajoin=true.

to fear for many in immigrant communities, causing individuals whose participation is essential to the proper functioning of courts to avoid courthouses and withdraw from the justice system.

### A. ICE Courthouse Enforcement Policies Have Had a Chilling Effect on Immigrant Communities in Ohio

ICE's courthouse arrest policies have directly impacted Ohio's state courts. The first Trump administration reversed longstanding ICE policy that "generally prohibited its officials from engaging in civil enforcement action at courthouses except in very limited circumstances." *United States v. New York*, 810 F. Supp. 3d at 336 (citation and internal quotation marks omitted); *see Velazquez-Hernandez v. U.S. Immigr. & Customs Enf't*, 500 F. Supp. 3d 1132, 1137-38 (S.D. Cal. 2020) (describing the federal government's pre-2017 policy as only "undertak[ing] immigration enforcement actions at or near courthouses against 'Priority 1' noncitizens," *i.e.*, "'aliens who pose a danger to national security or a risk to public safety.'" (citation omitted)). The removal of these restrictions led to a significant increase in courthouse arrests across the country, including in Ohio,[4] and created a culture of fear that deterred individuals in immigrant communities from appearing in court.

For example, in or about February 2020, the Hamilton County Clerk of Courts convened a task force in response to ICE's civil immigration arrests inside the Hamilton County Courthouse.[5] In announcing the task force, the Clerk of Courts stated that:

> What we're hearing from our immigrant communities, from everyday folks who just need to get work done here in the courthouse, is that this chilling effect is real,

[4] Letter to Ronald D. Vitiello, Acting Dir. of U.S. Immigr. & Customs Enf't, at 1 (Dec. 12, 2018), https://www.aila.org/aila-files/63652C13-CA16-41F3-9628-3A147863A531/18121701.pdf ("Former Judges' Letter").

[5] Courtney Francisco, *Clerk of courts, judges, attorneys create task force to help migrants feel safe in courthouse*, WCPO 9 (Feb. 11, 2020), https://www.wcpo.com/news/local-news/hamilton-county/clerk-of-courts-judges-attorneys-create-task-force-to-help-migrants-feel-safe-in-courthouse.

> that they don't necessarily feel welcome or safe here. And that's a problem. That's a problem for all of us.[6]

Hamilton County Municipal Court Judge Janaya Trotter Bratton, who also served on the task force, echoed these sentiments, stating, "I have known of rape victims scared to report their rapist for fear that their immigration status would be discovered."[7] She further stated that "[i]f there is no witness, there is no case. And the end result is violent perpetrators on our street to prey upon vulnerable people, citizens and noncitizens alike."[8]

After the current administration reprioritized civil immigration arrests at courthouses, concerns about the chilling effect of these actions prompted the Franklin County Court of Common Pleas' 17 judges to adopt, on an emergency basis, a local rule that, like Rule 2.10, prohibits civil arrests without a judicial warrant on courthouse grounds. *See, e.g.*, Press Release, Franklin County Court Issues Rules on Civil Immigration Enforcement at Courthouse (Feb. 28, 2025).[9] The court explained in a press release that the rule was necessary because ICE's recent courthouse enforcement activities were deterring court access:

> The Franklin County Court of Common Pleas - General Division has issued two new rules today restricting civil immigration enforcement actions within the courthouse. These changes, passed on an emergency basis, come in response to increased immigration enforcement on courthouse grounds in the last 30 days.

---

[6] WLWT Digital Staff, *New task force launching to protect immigrants, minorities in Hamilton County courthouse*, WLWT 5 (Feb. 11, 2020), https://www.wlwt.com/article/new-task-force-launching-to-protect-immigrants-minorities-in-hamilton-county-courthouse/30869660.

[7] Courtney Francisco, *Clerk of courts, judges, attorneys create task force to help migrants feel safe in courthouse*, WCPO 9 (Feb. 11, 2020), https://www.wcpo.com/news/local-news/hamilton-county/clerk-of-courts-judges-attorneys-create-task-force-to-help-migrants-feel-safe-in-courthouse.

[8] WLWT Digital Staff, *New task force launching to protect immigrants, minorities in Hamilton County courthouse*, WLWT 5 (Feb. 11, 2020), https://www.wlwt.com/article/new-task-force-launching-to-protect-immigrants-minorities-in-hamilton-county-courthouse/30869660.

[9] The press release remains publicly available at https://ohiocapitaljournal.com/wp-content/uploads/2025/05/Press-Release-Local-Rule-111-and-112-Franklin-County-Common-Pleas-Court.pdf.

> Courts have a unique Constitutional responsibility to protect due process and access to justice on behalf of the entire public. That mission is jeopardized when victims, witnesses, and defendants are afraid to come to the courthouse to testify and participate in ongoing cases, fearing civil arrest and deportation from courthouse grounds. That jeopardy affects the fairness of trials and other court proceedings for citizens and non-citizens alike, directly intruding on the Court's own core responsibilities for due process and public safety.

*Id.*[10]

After the Franklin County Court of Common Pleas' adoption of this local rule, ICE's immigration enforcement activities in Franklin County Municipal Court continued to deter Franklin County residents from accessing court. For example, in August 2025, the president of the Franklin County Public Defender Collective reportedly told the press that ICE officers "are in the Municipal Court at least weekly, often in plainclothes," creating "'an environment of fear and intimidation for our entire community.'"[11] Other attorneys practicing in the Municipal Court similarly reported that many of their clients were hesitant to appear in court because they feared the potential presence of ICE at the courthouse.[12]

In addition, on or about March 3, 2026, Franklin County Court of Common Pleas Judge Chris Brown presided over a stabbing case in which the victim refused to testify at the scheduled

---

[10] The second local rule referenced in the court's press release requires that written authorization be obtained prior to the execution of any judicial warrants in a Judge's courtroom and delimits the personal information that court employees may gather and share with immigration enforcement. *See* Franklin County Court of Common Pleas Local Rule 112.

[11] Jordan Laird, *Public defenders call on Franklin County Municipal Court judges to stop cooperating with ICE*, Columbus Dispatch (Aug. 5, 2025), https://www.dispatch.com/story/news/politics/2025/08/05/columbus-judges-cooperating-with-ice-as-public-defenders-push-back/85481821007.

[12] Katie Geniusz, *Central Ohio immigrants fear traffic court, renewing work visas due to possible ICE presence*, WOSU 89.7 NPR News (June 10, 2025), https://www.wosu.org/politics-government/2025-06-10/central-ohio-immigrants-fear-traffic-court-renewing-work-visas-due-to-possible-ice-presence?; Carla Rogner, *Activists push for rule change after 20 ICE arrests at Franklin County Municipal Court in 2025*, WBNS 10 (Feb. 12, 2026), https://www.yahoo.com/news/articles/activists-push-rule-change-20-230411389.html.

trial because he "was afraid to come to court due to his immigration status." (Judge Brown Facebook Post.) As Judge Brown stated in a Facebook post, the victim's unwillingness to participate in the trial resulted in a significant plea reduction for the defendant, who planned to argue at trial that he had acted in self-defense. (*Id.*) Judge Brown further stated:

> We'll never know if a violent felon was let off or acted lawfully in self-defense, because we never had a trial, because the victim was essentially locked out of the justice process due to ICE's random and aggressive enforcement policies. This problem is made worse by the fact that my colleagues in Municipal Court refuse to adopt the rules we in Common Pleas Court have adopted, prohibiting ICE enforcement actions except when authorized by a judicial warrant.

(*Id.*) He also "urge[d]" the Municipal Court to "adopt rules guaranteeing access to our courts," stating that "[t]he average person does not know the difference between our courts, and having two sets of rules for the two different courts effectively nullifies what Common Pleas has tried to do: allow all persons access to justice." (*Id.*) Approximately one week after Judge Brown's statement, the Franklin County Municipal Court proposed Rule 2.10 for public comment. (*See* ECF No. 1 ¶ 44.)

### B. ICE Courthouse Enforcement Policies Have Had a Chilling Effect on Immigrant Communities throughout the United States

The chilling effects of ICE's courthouse enforcement policies have been felt not only in Ohio but in immigrant communities across the country. In 2017, several state chief justices wrote letters to then-Attorney General Jefferson B. Sessions III and then-Secretary of Homeland Security John F. Kelly raising concerns that ICE civil immigration enforcement practices did or would create a climate of fear that deterred litigants, witnesses, and interested parties alike from attending court.[13] Similarly, in New York's earlier challenge to ICE's courthouse arrest policy, the court

---

[13] *See* Immigrant Defense Project, *Section 4: Statements from Chief Judges, Governors, Prosecutors, Attorneys General, and Bar Associations*, at 3, 6-13, https://www.immigrantdefenseproject.org/wp-content/uploads/CourthouseToolkitSection4.pdf.

found on summary judgment that there was "substantial evidence" that these arrests deterred some individuals from accessing courts, including "even those who were not themselves subject to these actions" who "now feared any kind of participation in the legal system." *New York v. U.S. Immigr. & Customs Enf't*, 466 F. Supp. 3d 439, 443 (S.D.N.Y. 2020), *vacated on other grounds* 2023 WL 2333979 (2d Cir. Feb. 28, 2023).

Numerous metrics collected during the first Trump administration demonstrate that ICE's courthouse arrests led members of immigrant communities to avoid courts. For example, court systems and law enforcement agencies reported declines in domestic violence reports and requests for protective orders among immigrant communities.[14] In addition, a 2019 survey revealed that 60 percent of respondents — members of mixed-immigration-status families, including immigrants lawfully present in the United States — avoided attending court as witnesses when they were victims of a crime.[15] A 2017 survey of judges about the impact of ICE's presence at courthouses found that 54 percent of respondents reported case interruptions due to an immigrant crime survivor's fear of coming to court.[16]

---

[14] *See, e.g.*, James Queally, *Fearing deportation, many domestic violence victims are steering clear of police and courts*, L.A. Times (Oct. 9, 2017), http://www.latimes.com/local/lanow/la-me-ln-undocumented-crime-reporting-20171009-story.html; Cora Engelbrecht, *Fewer Immigrants Are Reporting Domestic Abuse. Police Blame Fear of Deportation.*, N.Y. Times (June 3, 2018), https://www.nytimes.com/2018/06/03/us/immigrants-houston-domestic-violence.html; ICE Out of Courts Coalition, *Safeguarding the Integrity of Our Courts: The Impact of ICE Courthouse Operations in New York State*, at 22 (2019), https://www.immigrantdefenseproject.org/wp-content/uploads/Safeguarding-the-Integrity-of-Our-Courts-Final-Report.pdf.

[15] Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement (ICE) Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings*, Ceres Policy Research (Oct. 2019), Executive Summary available at https://www.immigrantdefenseproject.org/wp-content/uploads/ice.report.exec_summ.5nov2019.pdf.

[16] American Civil Liberties Union, *Freezing Out Justice – How immigration arrests at courthouses are undermining the justice system*, at 2 (May 3, 2018), https://www.aclu.org/report/freezing-out-justice.

The reimplementation of ICE's courthouse enforcement policies by the current administration has had the same harmful effects. For example, after observing that fear of ICE activity had affected "hundreds" of his office's cases, the District Attorney for Suffolk County, Massachusetts stated, "[t]he ultimate concern is that it has a chilling effect on our ability to deliver public safety for victims and witnesses of crime."[17] In Chesterfield County, Virginia, both the clerk and the sheriff reported an "evident" chilling effect that deterred people from appearing in court after ICE detained 15 people over a four-day period in June 2025, most of whom were in court to resolve traffic violations.[18] In New York, 20 district attorneys reported in an *amicus* brief that the number of calls to one office's Immigrant Affairs and Worker Protection hotlines "almost completely dried up"; that another office was required to send witness advocates to assist investigators in picking up victims for in-court testimony to ensure their appearance; and that, in multiple cases, immigrant victims of domestic violence ceased cooperating with another office's Victim Services Unit "out of a distinct fear that they would be arrested by ICE if they came to court to testify to grand juries," resulting in the dismissal of these cases.[19]

As former judges, we believe that courts cannot fulfill their obligation to provide equal justice when fear keeps litigants, witnesses, and victims from appearing.

---

[17] Simón Rios and Rachell Sanchez-Smith, *ICE agents are staking out local courthouses. As they've roamed the halls, Mass. court arrests tripled*, NHPR (Dec. 17, 2025), https://www.nhpr.org/new-england-news/2025-12-17/ice-courthouses-arrest-massachusetts-newengland-immigration.

[18] *See, e.g.*, Tyler Lane, *Chesterfield officials say ICE courthouse detainments are causing people to not show up for court*, CBS 6 News (July 18, 2025), https://www.wtvr.com/news/local-news/chesterfield-ice-detainments-officials-respond-july-18-2025.

[19] *Amicus* Brief of N.Y. District Attorneys in Support of Defs.' Mot. to Dismiss the Compl. at 5 (ECF No. 41), *United States v. New York*, No. 1:25-cv-744 (N.D.N.Y. Aug. 17, 2025).

## II. COURTHOUSE CIVIL IMMIGRATION ARRESTS INTERFERE WITH THE ADMINISTRATION OF JUSTICE

Immigration enforcement in and around state courthouses further interferes with the effective administration of justice by disrupting proceedings, creating confusion, distracting court officials, and creating public safety hazards for everyone with business before the courts. When ICE first increased its use of civil enforcement actions near state courthouses in 2017, judges across the country warned federal officials that such arrests were disrupting court proceedings, burdening court staff with requests to facilitate such arrests, and leading to physical altercations involving court employees.[20] As a result, ICE's presence has distracted court officials from their day-to-day responsibilities, disrupted court calendars, and consumed court resources. "The environment created by these incidents, in addition to the delays and rescheduling that result when fear prevents parties from appearing in court, only makes it more difficult for judges and court staff to do their jobs."[21]

### A. Courthouse Civil Immigration Enforcement Interferes with the Administration of Justice by Disrupting Court Proceedings

Both the Franklin County Court of Common Pleas and the Franklin County Municipal Court made clear that one purpose of their local rules prohibiting warrantless civil arrests was to prevent disruption to court proceedings and allow the courts to exercise their judicial function unimpaired by the other branches of government. The "Statement of Purpose" to the Franklin County Court of Common Pleas local rule provides, in relevant part:

> Any impairment to the litigation of criminal and civil cases in the Court of Common Pleas may affect the administration of justice. Constitutional courts were created to serve the litigants and the interest of the public at large, including victims.

---

[20] Former Judges' Letter, *supra* note 4, at 2.

[21] *Id.*

> It is the obligation of the judges of the Court of Common Pleas, Franklin County, Ohio, to operate the Court in a manner that is lawful, fair, and just, for the benefit of the citizens of Franklin County and all other litigants that come before it. To that end, the following rules are designed to promote the safe and secure access to court facilities for all residents having business with the Court, including victims, witnesses, and defendants, regardless of immigration status and to reduce disruptions to the disposition of both criminal and civil cases in this Court, while at the same time safeguarding the rights of litigants to the just processing of their cases.

Franklin County Court of Common Pleas Local Rule 111.01. Similarly, in Rule 2.10, the Franklin County Municipal Court included a "Statement of Purpose" reflecting that the rule was designed "to secure and safeguard the free and untrammeled exercise of [the court's] judicial functions" and to prevent the "other branches of the government" from "direct[ing], control[ling], or imped[ing]" its judicial functions. Rule 2.10(A).

Numerous examples illustrate the disruption caused by ICE policies encouraging courthouse arrests. As discussed above, the alleged victim's nonappearance at the stabbing trial in or about March 2026 before Franklin County Court of Common Pleas Judge Chris Brown led to a significant plea reduction. (Judge Brown Facebook Post.) Judge Brown concluded that "[w]hatever happened in courtroom 6B today, it sure wasn't justice. It was a travesty." (*Id.*) Likewise, Franklin County Court of Common Pleas Judge Carl Aveni, in an article published on the American Bar Association's website, wrote that, during the five weeks that elapsed between the federal government's reimplementation of the policy prioritizing warrantless civil arrests at courthouses and his court's adoption of the local rule prohibiting such conduct, "ICE had already arrested a defendant in our building, steps from the courtroom where his hearing had yet to take place."[22]

---

[22] Hon. Carl Aveni, *Due Process, Above All Else…*, ABA (Apr. 22, 2026), https://www.americanbar.org/groups/litigation/resources/litigation-news/2026/spring/due-process-above-all-else/?abajoin=true.

Examples from other courts reveal similar issues. In or about March 2026, ICE agents reportedly "drag[ged]" a criminal defendant out of a federal courtroom in Los Angeles shortly after the presiding judge left the bench following a pretrial status conference.[23] The presiding judge reportedly returned to the bench after the arrest and stated that he had never had something like that happen in his courtroom and that "there is not much I can do."[24] In another incident in Mecklenburg County, North Carolina, "multiple police and civilian witnesses were sent home after subjects were apprehended [by ICE] in advance of their scheduled trials," according to the local District Attorney.[25] In Massachusetts, ICE arrested a man charged with providing false information on a driver's license application as he was leaving the Boston Municipal Courthouse after the first day of his trial.[26] As the presiding judge found, ICE thereafter "secreted the defendant in an unknown location and refused to bring the defendant back to court for trial."[27] As a result, the trial jurors were present in the courthouse for two days before the court permanently excused them.[28]

---

[23] Brittny Mejia, *In rare move, ICE drags criminal defendant out of a federal courtroom*, L.A. Times (Mar. 20, 2026), https://www.latimes.com/california/story/2026-03-20/in-rare-move-ice-drags-criminal-defendant-out-of-federal-courtroom.

[24] *Id.*

[25] Joe Bruno, *Four taken into ICE custody at Mecklenburg County Courthouse*, WSOC-TV (Feb. 24, 2026), https://www.wsoctv.com/news/local/four-taken-into-ice-custody-mecklenburg-county-courthouse/NOVVFQITOZCOJG3ENQZ3UHJTLE/.

[26] Mary Markos et al., *Judge dismisses case against man detained by ICE mid-trial, finds agent in contempt*, NBC Boston (Mar. 31, 2025), https://www.nbcboston.com/news/local/dismayed-and-surprised-das-office-responds-after-man-is-detained-by-ice-mid-trial/3671872/.

[27] *Massachusetts Exec. Off. of the Trial Court v. Sullivan*, No. 25-cv-10769 (D. Mass.) (ECF Nos. 1-4 and 1-5) (Orders in *Commonwealth v. Martell Lebron*, 2001 CR 000384 (Boston Municipal Ct.)).

[28] *Id.*

There have been multiple other incidents in which ICE's courthouse enforcement activities have hampered court officials from carrying out their duties or have been so disruptive to courthouse facilities as to render them effectively inoperable for state judicial purposes, at least temporarily. With these arrests often taking place in courthouse hallways, for example, they have resulted in physical altercations that block those otherwise public spaces[29] or that require court staff to put aside their regular responsibilities and take action to limit the disruption.[30] In one incident, a chief criminal judge in Washington County, Oregon described how an attempted courthouse arrest outside of his courtroom, and an ensuing "melee," put his court-security deputy in a "clear Hobson's dilemma."[31] As described by the chief judge, the deputy had to "decide whether to confront the present violence and unknown danger, thereby abandoning the in-custody defendants, or stay at his post and accept the consequences [of] the violence being wrought."[32] Needless to say, such an environment makes it difficult for judges to do their jobs.

### B. Courthouse Civil Immigration Enforcement Interferes with the Administration of Justice by Creating Confusion and Public Safety Issues

ICE's courthouse arrests also impede the functioning of our courts by creating confusion and public safety issues. ICE agents often conduct their courthouse enforcement activities in plain clothes, without identifying themselves or alerting court officials or those responsible for court

---

[29] *See, e.g.*, Yesenia Amaro, *Video shows questionable ICE arrest inside Oregon Courthouse*, The Oregonian (Apr. 3, 2026), https://www.oregonlive.com/politics/2026/04/video-shows-questionable-ice-arrest-inside-oregon-courthouse.html.

[30] *See, e.g.*, Simón Rios and Rachell Sanchez-Smith, *ICE agents are staking out local courthouses. As they've roamed the halls, Mass. court arrests tripled*, NHPR (Dec. 17, 2025), https://www.nhpr.org/new-england-news/2025-12-17/ice-courthouses-arrest-massachusetts-newengland-immigration.

[31] E-mail from Chief Criminal Judge Andrew R. Erwin to WSH-Judges, et al. (June 1, 2018), https://www.brennancenter.org/sites/default/files/2020-05/Ryan%20et%20al_Erwin%20email%206.1.18.pdf.

[32] *Id.*

security of their enforcement activities. In some cases, these activities have resulted in violent clashes in public areas of courthouses.

Ohio has seen multiple examples of ICE agents conducting courthouse enforcement operations in plain clothes and without visible identification. In February 2018, ICE agents in plain clothes arrested a man as he left Hilliard Mayor's Court after reportedly appearing to answer a traffic summons.[33] Video of the incident also showed the man's attorney being ordered to step back as he tried to determine who the agents were; he later said they "looked like construction workers."[34] A local reporter stated that witnesses "thought it might be a hostage taking."[35] In June 2025, video captured an ICE agent arresting a man with a pending asylum application in Franklin County Municipal Court after the man pleaded guilty to a speeding offense.[36] The video showed that the agent was in plain clothes and had no visible badge or vest identifying him as law enforcement.[37]

Confusion is exacerbated when ICE agents conduct enforcement operations in a courthouse without alerting court officials, including the personnel responsible for court security. The ICE enforcement activities that led to the creation of the Hamilton County Courthouse task force referenced above reportedly occurred without the knowledge of the Hamilton County Clerk of Courts, who was responsible for security in the municipal courtrooms, or the Hamilton County

---

[33] *Attorney: Immigration agents are targeting Central Ohio traffic courts*, NBC4 Columbus (Feb. 27, 2018), https://www.youtube.com/watch?v=FTcszDlcIwE&t=1s.

[34] *Id.*

[35] *Id.*

[36] Isabel Cleary, *Wife of man detained by ICE in hallway of Franklin County traffic court says community is 'very afraid'*, NBC4 Columbus (June 13, 2025), https://www.nbc4i.com/news/local-news/columbus/wife-of-man-detained-by-ice-in-hallway-of-franklin-county-traffic-court-says-community-is-very-afraid/.

[37] *Id.*

Sheriff, who was responsible for security in courthouse hallways and the Court of Common Pleas.[38]

Incidents from other states after the current administration reimplemented courthouse enforcement in 2025 further demonstrate how these policies create confusion and demand the attention of court staff. For example, in November 2025, ICE detained a high-school student intern at the Rhode Island Superior Court.[39] The incident reportedly began inside the courthouse, including in one of the courtrooms, when ICE agents took photographs of the teen in violation of court rules.[40] A Superior Court judge thereafter attempted to drive home the student, who was shaken by the agents' actions, but ICE agents surrounded the judge's car.[41] The agents reportedly demanded that everyone, including the judge, exit the vehicle and threatened to break the car's windows if they did not comply.[42] Over the protests of the judge and the court's head of security, ICE agents restrained the student and led him away before confirming that the incident was a case of mistaken identity.[43]

Some of these incidents in other states have led to violent confrontations that threatened public safety, including to non-targets of ICE's actions. For example, in or about February 2025,

---

[38] Courtney Francisco, *ICE agents have been entering Hamilton County courthouse to detain migrants*, WCPO 9 (Jan. 16, 2020), https://www.wcpo.com/news/local-news/hamilton-county/ice-agents-enter-hamilton-county-courthouse-to-detain-migrants.

[39] Jusolyn Flower et al., *RI judge intervenes after ICE wrongfully detains Superior Court intern*, WPRI 12 (Nov. 21, 2025), https://www.wpri.com/news/local-news/providence/ri-judge-intervenes-after-ice-mistakenly-detains-superior-court-intern.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Imani Clement, *ICE mistakenly detains teenage judicial intern outside Providence courthouse*, WCVB 5 (Nov. 21, 2025), https://www.wcvb.com/article/ice-mistakenly-detains-teenage-judicial-intern-outside-providence-courthouse/69502648.

ICE agents tackled a Venezuelan man in the lobby of a courthouse in Nashua, New Hampshire, as he was heading to an arraignment on misdemeanor charges.[44] In the process, the ICE agents knocked over an elderly bystander, leading a witness to question why the detainee was "so violently hustled to the ground the way he was in such an unsafe manner for him and everyone else around him."[45] In an incident at the state courthouse in Stamford, Connecticut, ICE agents reportedly arrested two brothers who had locked themselves in a courthouse bathroom.[46] The confrontation required Connecticut judicial marshals to clear lawyers and members of the public from the area, and ICE thereafter reportedly kicked in the glass on the bathroom door to gain entry and take the brothers into custody.[47] A lawyer who was nearby when the incident occurred stated that he smelled an odor resembling pepper spray, and another eyewitness reported that ICE agents ignored a Connecticut judicial marshal's unsuccessful attempt to prevent them from entering the courthouse.[48]

---

[44] Holly Ramer, *A Venezuelan man was tackled in a New Hampshire courthouse and sent by ICE to Texas*, AP News (Apr. 14, 2025), https://apnews.com/article/immigrant-ice-arrest-court-c81b0c7b5b50767072fc35bebce8a373.

[45] *Id.;* Kelly O'Brien, *Agents who detained man at Nashua courthouse were working with ICE, News 9 learns*, WMUR 9 (Apr. 8, 2025), https://www.wmur.com/article/agents-nashua-courthouse-detention-ice-4825/64424438.

[46] Angela Carella, *Federal Immigration Agents Step Up Enforcement at Stamford Courthouse*, CT Examiner (Aug. 12, 2025), https://ctexaminer.com/2025/08/12/federal-immigration-agents-step-up-enforcement-at-stamford-courthouse/.

[47] *Id.*; Jim Haddadin, *Immigration enforcement officers arrest two men inside Stamford courthouse*, CT Mirror (Aug. 12, 2025), https://ctmirror.org/2025/08/12/ice-stamford-courthouse-arrests/.

[48] Angela Carella, *Federal Immigration Agents Step Up Enforcement at Stamford Courthouse*, CT Examiner (Aug. 12, 2025), https://ctexaminer.com/2025/08/12/federal-immigration-agents-step-up-enforcement-at-stamford-courthouse/; Jim Haddadin, *Immigration enforcement officers arrest two men inside Stamford courthouse*, CT Mirror (Aug. 12, 2025), https://ctmirror.org/2025/08/12/ice-stamford-courthouse-arrests/.

These incidents underscore that civil immigration enforcement at courthouses threatens both access to justice and the orderly administration of justice. Rule 2.10 addresses those threats by protecting courthouse operations and ensuring that all individuals, regardless of immigration status, can safely access the courts. The Court should deny the Government's motion and preserve Rule 2.10.

## CONCLUSION

For the foregoing reasons, *amici* join in asking this Court to deny the Government's Motion for a Preliminary Injunction.

Dated: Columbus, Ohio
October 1, 2026

By: /s/*John S. Marshall*
**MARSHALL FORMAN & SCHLEIN LLC**
John S. Marshall (0015160)
250 Civic Center Drive, Suite 480
Columbus, Ohio 43215
Telephone: (614) 463-9790
jmarshall@marshallforman.com

**LEVINE LEE LLP**
Kenneth E. Lee (*admission pending*)
Scott B. Klugman (*admission pending*)
Julia Timerman (*admission pending*)
400 Madison Ave
New York, New York 10017
Telephone: (212) 223-4400
klee@levinelee.com
sklugman@levinelee.com
jtimerman@levinelee.com

**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**
Douglas E. Keith (*admission pending*)
Michael A. Milov-Cordoba (*admission pending*)
120 Broadway, 17th Floor
New York, New York 10271
Telephone: (646) 292-8310
keithd@brennan.law.nyu.edu
milov-cordobam@brennan.law.nyu.edu

*Attorneys for Amici Curiae*

## APPENDIX: LIST OF AMICI

Hon. Ronald Adrine, Cleveland Municipal Court Judge (Ret.)

Hon. Ted Barrows, Franklin County Municipal Court Judge (Ret.)

Hon. Eric Brown, Chief Justice, Supreme Court of Ohio; Franklin County Probate Court Judge; Franklin County Court of Common Pleas Judge; Franklin County Municipal Court Judge (Ret.);

Hon. Michael P. Donnelly, Associate Justice, Supreme Court of Ohio; Cuyahoga County Court of Common Pleas Judge (Ret.)

Hon. Maureen O'Connor, Chief Justice, Supreme Court of Ohio; Associate Justice, Supreme Court of Ohio (Ret.)

## APPENDIX: JUDGE BROWN FACEBOOK POST



**Judge Chris Brown**
March 3 ·

"There are literally millions of aliens living within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law." Justice Stevens, writing for a unanimous U.S. Supreme Court, Mathews v. Diaz, 426 U.S. 67, 77 (1976).

This morning we were set for a trial in a stabbing case. The case resolved with a significant plea reduction because the victim was afraid to come to court due to his immigration status. The defendant, for his part, planned to argue he acted in self-defense.

We'll never know if a violent felon was let off or acted lawfully in self-defense, because we never had a trial, because the victim was essentially locked out of the justice process due to ICE's random and aggressive enforcement policies. This problem is made worse by the fact that my colleagues in Municipal Court refuse to adopt the rules we in Common Pleas Court have adopted, prohibiting ICE enforcement actions except when authorized by a judicial warrant.

It doesn't need to be this way. Whatever you feel about these policies, the practical effect is to bar the courthouse to victims, witnesses, and other litigants. I urge my brothers and sisters in Municipal Court to adopt rules guaranteeing access to our courts. The average person does not know the difference between our courts, and having two sets of rules for the two different courts effectively nullifies what Common Pleas has tried to do: allow all persons access to justice.

These policies serve no one and accomplish nothing except to deepen fear of the justice process. Whatever happened in courtroom 6B today, it sure wasn't justice. It was a travesty. **See less**

214 62 24

Like Comment

## CERTIFICATE OF SERVICE

I hereby certify that, on **October 1, 2026**, I electronically filed the foregoing with the Clerk of the Court by using this Court's e-Filing System, which will send a notice of this electronic filing to all counsel of record in this matter.

*/s/ John S. Marshall*
John S. Marshall (0015160)